FOURTH DIVISION

November 17, 2005

No. 1-05-0552

ILLINOIS COMMERCE COMMISSION, ) Appeal from the

) Circuit Court of

Petitioner-Appellee, ) Cook County.

)

v. ) No. 04 CH 19444

)

ENTERGY-KOCH TRADING, LP, ) Honorable

) Richard A. Siebel,

Respondent-Appellant. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Respondent Entergy-Koch Trading, LP, appeals from the circuit court’s denial of its motion to dismiss the Illinois Commerce Commission’s (ICC) application to compel the production of certain documents and recordings for an administrative proceeding to which respondent is not a party.  Respondent also appeals from the circuit court’s holding, pursuant to its dismissal order, that respondent is subject to the jurisdiction of Illinois courts.  For the reasons that follow, we affirm.

Respondent is a limited partnership entity which is wholly owned by another limited partnership, Entergy-Koch, LP (EKLP), and until 2004 functioned as a wholesale energy trading and consulting company.  Respondent was incorporated in Delaware and its principal place of business is Houston, Texas.  EKLP represents a limited partnership between Entergy Corporation, with its principal place of business in New Orleans, Louisiana, and Koch Energy, Inc., with its principal place of business in Wichita, Kansas.  

In October 2000, Koch Energy Trading, Inc., a subsidiary of Koch Energy, Inc., merged with IMD Storage Transportation and Management (IMD).  In February 2001, Koch Energy Trading was merged with respondent.  Between August 1999 and November 2000, IMD was registered in Illinois as a foreign limited liability company and had an Illinois registered agent.

Between 1999 and 2003, respondent and IMD entered into contracts with Northern Illinois Gas Company (NICOR) for consultation services in connection with NICOR’s Gas Cost Performance Program (Program), which allowed the company to share in any savings it achieved through procuring natural gas on the open market as measured against financial benchmarks established by the ICC.  Specifically, respondent and IMD received payment from NICOR for proposing strategies on the storage of its acquired gas supplies.  In February 2001, the services performed by IMD were transferred to respondent.  NICOR’s working relationship with respondent encompassed approximately 80 contracts, letter agreements, modifications and written strategies.  Under those agreements respondent developed, marketed to, and implemented supply, storage, and risk management strategies on behalf of NICOR in order to maximize NICOR’s profits under the Program.  Some of the major agreements were drafted primarily in Illinois and contained Illinois choice of law provisions.  In the performance of those contracts, respondent’s personnel would travel to Illinois to meet in person with NICOR personnel, speak by telephone, and correspond by mail.  Respondent staged several presentations in Illinois relating to its working relationship with NICOR, and between 1999 and 2003, NICOR tendered $6.7 million in fees to respondent.

The ICC opened investigations into NICOR’s activities under the Program to determine whether the rates NICOR charged to Illinois consumers were just and reasonable.  As part of the proceedings, in July 2004, the ICC issued administrative subpoenas for certain materials in respondent’s possession relating to the rates charged by NICOR to consumers under the Program, specifically recordings of telephone calls and business documents pertaining to the consulting services respondent provided to NICOR from 1999 to 2003.  Respondent failed to comply with the subpoenas, and the ICC filed an application to compel their enforcement in November 2004.

Respondent filed a motion to dismiss for lack of personal jurisdiction pursuant to section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301 (West 2004)).  Respondent argued that the ICC’s application to compel failed to allege personal jurisdiction and that no provision existed in the Illinois long-arm statute (735 ILCS 5/2-209 (West 2004)) that would confer jurisdiction.  Respondent asserted that it was a foreign entity without a registered agent, office, principal place of business, affiliates, or parent entities located in Illinois.  Respondent also asserted that it had no contacts or bank accounts in Illinois, nor was it licensed or admitted to do business in the state, nor did it have any employees or property or pay taxes in Illinois.

Respondent admitted that it had entered into contracts with NICOR, an Illinois entity, for the transportation, storage, distribution, and financial trades of natural gas supplies, but argued that the negotiation, substantial performance, and execution of those contracts occurred at its place of business in Texas.  Respondent also asserted that the mere possession of the documents and recordings sought by the ICC was insufficient to confer jurisdiction to Illinois courts and that it did not have sufficient minimum contacts with NICOR to submit it to the jurisdiction of Illinois courts.  Lastly, respondent contended that it never purposefully availed itself of the privilege of doing business in Illinois and that the subject matter of the ICC’s application to compel did not arise from its contacts with Illinois.

In a written order, the circuit court denied respondent’s motion and found that the evidence weighed in favor of jurisdiction over respondent, pursuant to section 2-209(a)(7) of the long-arm statute, under which foreign corporate defendants in causes of action arising from the making or performance of contracts connected with Illinois are subject to the jurisdiction of Illinois courts.  735 ILCS 5/2-209(a)(7) (West 2004).  The court relied on the facts that IMD had preceded respondent in the agreement to and execution of the contracts with NICOR, that the contracts were at least partly performed in Illinois, that respondent had engaged in solicitation efforts to secure the agreements, and that the ICC subpoenas related to NICOR’s activities relating to the Program.

The court also found jurisdiction proper pursuant to section 2-209(a)(1), which confers jurisdiction over causes of action that arise from the transaction of business in Illinois.  735 ILCS 5/2-209(a)(1) (West 2004).  The court noted that, as a result of its contractual relationship with NICOR, respondent was involved in the execution of and was paid for services in connection with NICOR’s Program, and made continuous and systematic business communications in Illinois, both in person and electronically.  

The circuit court determined that Illinois jurisdiction did not violate due process because respondent had the requisite minimum contacts within Illinois by means of actively marketing its services to NICOR, continuously communicating with NICOR, and remitting invoices to and accepting payment from NICOR, such that respondent had fair warning that it might be subject to litigation in Illinois at some point in time.  The court noted that the agreements between respondent and NICOR specifically incorporated the terms of the agreements between NICOR and IMD, that payments were to be remitted to the same bank account that IMD had used, and that a majority of the agreements between respondent and NICOR contained provisions stating that Illinois law would govern them and that disputes would be litigated in Illinois.  The court therefore found that respondent had derived financial benefits from its activities with an Illinois entity and took advantage of the benefits and protections of Illinois law such that it had submitted itself to the jurisdiction of Illinois courts.  

Respondent sought an order from the circuit court to certify the issue of personal jurisdiction for interlocutory appeal, pursuant to Supreme Court Rule 308.  155 Ill. 2d R 308.  The circuit court denied respondent’s motion.  Respondent thereafter filed a petition in this court for leave to file an interlocutory appeal pursuant to Supreme Court Rule 306(a)(3).  166 Ill. 2d R 306(a)(3).  We granted the petition and now affirm.

Respondent contends on appeal that the circuit court’s ruling was erroneous because the ICC’s application to compel the production of the records it seeks did not allege a 
prima facie 
basis for personal jurisdiction over respondent; because there is no connection between respondent’s business activities in Illinois with NICOR and the instant cause of action, i.e. the ICC’s application to compel production; and because the exercise of Illinois jurisdiction over respondent would violate due process.  

A plaintiff has the burden of establishing 
prima facie 
bases for exercising a court’s 
in personam 
jurisdiction over a defendant.  
Haubner v. Abercrombie & Kent International, Inc.
, 351 Ill. App. 3d 112, 117 (2004).  A plaintiff’s 
prima facie 
case may be rebutted by a defendant’s uncontradicted evidence that defeats jurisdiction.  
Alderson v. Southern Co.
, 321 Ill. App. 3d 832, 846 (2001).  Where a circuit court determines jurisdiction based on documentary evidence, we review the court’s decision 
de novo
.  
Alderson
, 321 Ill. App. 3d at 846.  

Respondent first contends that the ICC’s application to compel failed to plead allegations establishing the circuit court’s jurisdiction over respondent and that such an omission is fatal to the application.  A plaintiff must allege facts in its initial complaint upon which to base the relevant court’s jurisdiction over a nonresident defendant under the long-arm statute.  
Heller Financial, Inc. v. Conagra, Inc.
, 166 Ill. App. 3d 1, 4 (1988).  

The ICC’s application stated that it sought compulsory production of records and witnesses on the basis of NICOR’s contractual relationships with respondent and IMD in instituting and administering its Program over the course of several years.  The application also stated that NICOR was an Illinois public utility subject to regulation by the ICC, and that the ICC sought the records in respondent’s possession as part of a reconciliation proceeding to determine the prudence of NICOR’s gas purchasing decisions, which were sometimes implemented based on consultations with respondent and which affected the cost of gas sold to Illinois consumers by NICOR .  

We find that the ICC’s application, while it may not have cited specific statutory bases for exercising the circuit court’s jurisdiction, did allege sufficient facts to allege jurisdiction pursuant to sections 2-209(a)(1) (transaction of business in Illinois), 2-209(a)(7) (making or performance of contract connected with Illinois), and 2-209(b)(4) (doing business in Illinois).  735 ILCS 5/2-209 (a)(1), (a)(7), (b)(4) (West 2004).  Accordingly, we reject respondent’s argument that the ICC’s application to compel was defective on its face, and proceed to the issue of whether the circuit court’s finding of jurisdiction was proper.

Our analysis of the propriety of the circuit court’s jurisdiction is a bifurcated process.  In determining whether an Illinois court’s jurisdiction is proper over a foreign defendant, we evaluate: (1) whether the facts of the case satisfy the requirements of the long-arm statute; and (2) whether jurisdiction is permissible under the notions of due process.  
Rollins v. Elwood
, 141 Ill. 2d 244, 271 (1990). 

We first address the issue of whether jurisdiction is proper pursuant to the Illinois long-arm statute.  A court can assert either specific or general jurisdiction over a particular defendant.  Specific jurisdiction refers to personal jurisdiction in a suit arising out of or related to the defendant’s contacts with the forum state, while general jurisdiction applies to suits neither arising out of nor related to the defendant’s particular activities and is proper only where the defendant has continuous and systematic business contacts within the forum state.  
Borden Chemicals & Plastics, L.P. v. Zehnder
, 312 Ill. App. 3d 35, 41 (2000).  In specific jurisdiction cases, the action must directly arise out of the contacts between the defendant and the forum.  
Alderson
, 321 Ill. App. 3d at 857.  By contrast, a court may assert general jurisdiction over a defendant that has carried on business activities within the forum state with a fair measure of permanence and continuity ("doing business” pursuant to section 2-209(b)(4) of the long-arm statute) regardless of whether the cause of action arises directly out of the defendant’s contacts with the forum state.  
Spartan Motors, Inc. v. Lube Power, Inc.
, 337 Ill. App. 3d 556, 561 (2003).   

An Illinois court may assert specific jurisdiction over a nonresident defendant pursuant to the long-arm statute if the defendant, 
inter alia
, transacts business in Illinois or makes or performs a contract substantially connected with Illinois and those activities give rise to the immediate cause of action.  735 ILCS 5/2-209(a)(1), (a)(7), (f) (West 2004); 
cf.
 
Haubner
, 351 Ill. App. 3d at 117. 

In determining whether a defendant was in fact transacting business and entered into contracts in Illinois, we consider several factors, including who initiated the transactions, where the contract was entered into, and where the performance of the contract was to take place.  
Ruprecht Co. v. Sysco Food Services of Seattle, Inc.
, 309 Ill. App. 3d 113, 122 (1999).   The location of the actual parties in a transaction or to a contract and the formation of the relevant contract are rarely dispositive of whether a defendant indeed transacted business in Illinois, seeing as much of modern business is transacted by mail and electronic communications across state lines.  
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543, 105 S. Ct. 2174, 2184 (1985).   Often, even isolated solicitation of Illinois residents that results in ongoing commercial relationships and has substantial impacts on their interests is sufficient to constitute the transaction of business under the long-arm statute.  
Alderson
, 321 Ill. App. 3d at 855-56.  

Here, it is undisputed that respondent entered into as many as 80 contracts with NICOR and advised NICOR, repeatedly and over the course of several years, regarding the utility’s acquisition and storage of natural gas reserves for later sale to Illinois consumers in exchange for several million dollars in consulting fees.  Respondent and NICOR corresponded numerous times via telephone and letter and their respective personnel met in person on several occasions.  On these facts it is obvious that respondent actively solicited business from NICOR, that it entered into an ongoing contractual relationship with NICOR, and that its actions affected the interests of Illinois residents by way of its advice to NICOR concerning the acquisition, storage, and distribution of natural gas.  Accordingly, we find that respondent’s interaction with NICOR constituted the transaction of business in Illinois pursuant to the long-arm statute.

Respondent argues that the circuit court erred in finding jurisdiction pursuant to sections 2-209(a)(1) and 2-209(a)(7) because respondent’s interactions with NICOR did not give rise to the immediate cause of action, the ICC’s application to compel respondent to produce witnesses and records.  Respondent argues that the cause of action is between it and the ICC, not between it and NICOR, and that jurisdiction would only be proper if respondent had had direct business transactions or contractual obligations with the ICC.  

Respondent relies on section 2-209(f), which states: "Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon subsection (a).”  735 ILCS 2-209(f) (West 2004).  Respondent also relies on this court’s decision in 
Gaidar v. Tippecanoe Distribution Service, Inc.
, 299 Ill. App. 3d 1034 (1998), where we held that the dismissal of a defendant for lack of personal jurisdiction was proper even though the defendant had conducted business in Illinois but the cause of action for which the plaintiff sought relief – negligence on the part of the defendant leading to a fatal automobile accident – arose in Indiana and not in Illinois.  The court reasoned that conducting business in Illinois then later traveling to Indiana where the accident occurred did not constitute a close enough relationship between the defendant and his actions within the forum state to hale him into an Illinois court to defend against the plaintiff’s suit.  
Gaidar
, 299 Ill. App. 3d at 1046-47. 

Respondent points out that the instant action arises from its possession of documents and recordings that the ICC wishes to examine in the course of a reconciliation proceeding involving NICOR and that respondent is not a party to that proceeding, as well as the fact that the possession of records is not an act explicitly listed as giving rise to Illinois jurisdiction under section 2-209(a).  Respondent maintains that the circuit court’s finding of jurisdiction pursuant to that section was therefore erroneous.

We would posit that respondent’s interactions with NICOR did indeed give rise to the immediate cause of action.  As stated above, respondent engaged in significant business transactions and several contracts with NICOR, a public utility that is subject to state regulation under the Public Utilities Act (Act) (220 ILCS 5/1 
et seq.
 (West 2004)).  220 ILCS 5/3-105
 
(West 2004).  As a regulated utility, NICOR is subject to supervision by the ICC in establishing its rates and providing reliable service without discrimination.  220 ILCS 5/4-101 (West 2004); 
City of Chicago v. Illinois Commerce Comm’n
, 294 Ill. App. 3d 129 (1997).  Under the Act, NICOR is required to file tariffs with the ICC; tariffs are public documents setting forth services being offered, the rates and charges for those services, and the rules, regulations, and practices relating to those services.  220 ILCS 5/9-102 (West 2004); 
Adams v. Northern Illinois Gas Co.
, 211 Ill. 2d 32, 55 (2004).  The ICC is required to conduct annual hearings to examine whether a utility’s tariffs reflect the costs of purchased fuel, gas, or power in order to determine whether such purchases were prudent.  220 ILCS 5/9-220(a) (West 2004); 
Illinois Power Co. v. Illinois Commerce Comm’n
, 339 Ill. App. 3d 425, 427 (2003).  In such proceedings, the utility must show that it exercised a reasonable standard of care under the circumstances that prevailed and in light of the facts available at the time it made its purchasing decisions.  
Illinois Power Co.
, 339 Ill. App. 3d at 428.   

Alternatively, a utility may petition the ICC to implement other regulatory rate mechanisms that reward or penalize the utility through the adjustment of rates based on its performance.  220 ILCS 5/9-244(a)(ii) (West 2002).  The ICC may approve such a program if it finds that it is likely to result in rates lower than those that would have been in effect under traditional rate regulation, the program is likely to result in benefits to the utility’s customers, and the program otherwise complies with the provisions of the Act.  220 ILCS 5/9-244(b)(1) through (b)(8) (West 2004).  The ICC is required to review any program it approves under this subsection two years after its implementation to determine whether the program is meeting its objectives or it may investigate whether the utility is implementing its program in accordance with the ICC’s approval order.  220 ILCS 5/9-244(c), (d) (West 2004).  It was just this sort of proceeding that led to the present appeal.  

For the past two years and in three separate proceedings, the ICC has been attempting to fulfill its duties pursuant to the Act and determine whether NICOR’s gas purchases under the Program, which were often executed on the advice and counsel of respondent, were executed in accordance with the Program’s objectives and the ICC’s approval of the Program’s implementation.  By its own admission, respondent consulted and advised NICOR on its natural gas purchasing and storage strategy, which undoubtedly affected the rates it charged to customers to reflect its own costs in providing service.  Further, the fees NICOR paid respondent for its advice obviously factored into its costs of providing service and in turn the rates it charged customers.  Respondent’s advice to NICOR undeniably influenced the rates NICOR charged customers during the periods the ICC has been attempting to review, a review which requires a complete record of the facts available to NICOR at the time it administered the Program.  Respondent’s advice to NICOR at those times is an integral part of such a record, and the ICC cannot conduct the kind of review that it is statutorily required to conduct without accurate representations of respondent’s advice.

While respondent maintains that its contacts with Illinois and its regulators are too attenuated for an Illinois court to assert jurisdiction, we believe that the relationship between the immediate cause of action and respondent’s jurisdictional activities is sufficiently close in this instance to justify Illinois jurisdiction.  The present action is certainly one that "lies in the wake” of respondent’s commercial activities involving an Illinois public utility.  See 
Volkswagen Insurance Co. v. Whittington
, 58 Ill. App. 3d 621, 624 (1978).  Accordingly, we find that the facts of the case satisfy the requirements for jurisdiction under the Illinois long-arm statute.

We next examine whether jurisdiction in this instance would be proper according to the notions of due process.  Under federal due process guidelines, a state may exercise jurisdiction over a foreign defendant where the defendant has certain minimum contacts with the forum state such that requiring the defendant to litigate in the forum state would not offend traditional notions of fair play and substantial justice.  
International Shoe Co. v. Washington
, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945).  Illinois courts comport with due process when they assert jurisdiction over a nonresident defendant where it is fair, just, and reasonable to require the defendant to litigate in Illinois, considering the quality and nature of the defendant’s acts in Illinois or which affect interests in Illinois.  
Rollins
, 141 Ill. 2d at 275. Jurisdiction accords with federal due process where the nonresident defendant has purposefully directed its activities at residents of the forum state and the litigation results from those activities.  
Burger King
, 471 U.S. at 471-72, 85 L. Ed. 2d at 540-41, 105 S. Ct. at 2181-82.  The minimum contacts requirement is met where the foreign defendant deliberately engages is significant activities within the forum state or has established continuing obligations with forum state residents.  
Burger King
, 471 U.S. at 474, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183.  

In determining whether jurisdiction conforms with notions of fair play and substantial justice, this court considers: (1) Illinois’ interest in adjudicating the dispute; (2) the plaintiff’s interest in obtaining convenient and effective relief; (3) the interstate judicial system’s interest in obtaining the most effective resolution of controversies; and (4) the states’ shared interest in furthering social policies.  
World-Wide Volkswagen Corp. v. Woodson
, 444 U.S. 286, 292, 62 L. Ed. 2d 490, 498, 100 S. Ct. 559, 564 (1980).  

 We have already examined the quality and nature of respondent’s activities in Illinois and established that respondent purposefully directed its activities at NICOR, engaged in continuing obligations with it, and earned significant revenue as a result of those activities, and that its activities most certainly affected the interests of Illinois residents by influencing the rates they paid for gas services during the periods in which respondent consulted on NICOR’s purchasing and storage strategies under the Program.  Moreover, respondent, at the time of its transactions with NICOR, was an established energy trader, and in negotiating and executing numerous significant transactions with NICOR, had to have been aware that it was dealing with a state-regulated entity whose purchasing decisions and overall operation were subject to strict oversight from the ICC.  Respondent certainly was not lacking notice that its activities would affect interests in Illinois and could certainly give rise to legal disputes here.

Moreover, we have already established that finding jurisdiction in this instance would serve Illinois’ interest in adjudicating the immediate dispute by way of the ICC’s obligations to fulfill its statutory duty to review NICOR’s implementation and administration of its natural gas Program, which the ICC cannot effectively fulfill without the records currently in respondent’s possession.  This dovetails with the ICC’s interest in obtaining the relief it seeks, in that the production of the records in respondent’s possession would enable it to fulfill its statutory duties and ensure that Illinois consumers are being provided with adequate service at reasonable rates on the part of NICOR.  A finding of jurisdiction would also serve the interests of the interstate judicial system in that it would expedite the ICC’s review and spare the system the initiation of extraneous proceedings in other fora, such as a Texas or federal district court, in order for the ICC to obtain another judicial directive and receive the information that it seeks from respondent.

Finally, jurisdiction would serve the state’s interest in furthering social policies in that the ICC would be able to perform its statutory mandate to ensure that Illinois consumers receive reliable utility service at reasonable rates by determining whether the rates Illinois consumers were charged as a result of NICOR’s consultations with respondent were indeed fair and reasonable.  With the increasing rate of deregulation of interstate energy sales and services at the federal level (see, 
e.g.
, J. Jurewitz, 
Evolving Structural Change and Business Strategies in the U.S. Electricity Industry
, Claremont Colleges Working Papers in Economics (2000)), it rests with state authorities to ensure that their citizens receive dependable utility service at fair prices.  While respondent maintains that its services affected only the utility, NICOR, and not its customers, we do not believe that such a distinction insulates it from requests for information necessary to the proper functioning of state regulatory proceedings.  If respondent is able to avoid complying with an order to produce information necessary to the resolution of statutorily mandated reviews, foreign third-party consultants could also be shielded from cooperating with similar proceedings in other states, leaving regulators with little to no authority to enforce just and reasonable rate schemes, on no basis other than geography.

Accordingly, we conclude that jurisdiction would not offend federal notions of due process, and, for the foregoing reasons, we affirm the circuit court’s finding of jurisdiction and its denial of respondent’s motion to dismiss.

Affirmed. 

QUINN, P.J., and MURPHY, J., concur.