THIRD DIVISION
DECEMBER 28, 2007

No. 1-07-1442

| | | |
|---|---|---|
| LAUREN SABADOS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 L 8071 |
| | ) | |
| PLANNED PARENTHOOD OF | ) | |
| GREATER INDIANA, an Indiana Corporation, | ) | The Honorable |
| | ) | Ronald S. Davis, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Planned Parenthood of Greater Indiana, Inc. (PPI)[1], appeals the order of the trial court denying its motion to dismiss the underlying cause of action for lack of jurisdiction pursuant to section 2-209 of the Code of Civil Procedure (Code) (735 ILCS 5/2-209 (West 2004)) in favor of plaintiff, Lauren Sabados. On appeal, defendant contends that the trial court erred in denying its motion to dismiss for lack of *in personam* jurisdiction where the nonresident health care provider rendered services to plaintiff in its Hammond, Indiana, clinic.

Plaintiff filed the underlying medical negligence action based on defendant's alleged failure to comply with an adequate standard of care in her treatment. On June 4, 2004, plaintiff, who was 16 years old at the time, lived in Lansing, Illinois, and traveled four miles to the PPI clinic in Hammond, Indiana, to obtain contraceptives. PPI prescribed plaintiff a form of birth control pills and after ingesting the prescribed dosage for approximately two months, plaintiff developed a blood clot. In July 2006, plaintiff filed a complaint in the circuit court of Cook County alleging

---

[1]Defendant corporation is now known as Planned Parenthood of Indiana, Inc.

that she suffered permanent injuries as a direct result of defendant's failure to obtain an adequate medical history prior to prescribing her the birth control pills. In response, defendant's counsel filed a special and limited appearance to contest *in personam* jurisdiction on the basis that PPI does not provide any services in Illinois and lacks the requisite minimum contacts with Illinois to support an exercise of jurisdiction and subsequently filed a motion to dismiss pursuant to section 2-619(1) of the Code (735 ILCS 5/2-619(1) (West 2004)) to that effect. The trial court then granted plaintiff's request to conduct limited discovery pursuant to Supreme Court Rule 201(l) (166 Ill. 2d. R. 201(l)), and thereafter plaintiff filed a response in opposition to defendant's motion to dismiss. A hearing was held on May 3, 2007, at the conclusion of which the trial court denied defendant's motion. The trial court did not elaborate as to which section of the jurisdictional statute it used to exercise jurisdiction over defendant. We granted defendant's timely filed petition for leave to appeal that order.

Pursuant to the Rule 201(l) discovery, the trial court learned that PPI provides health care throughout Indiana at 37 different locations within that state. PPI does not own property in Illinois and is not registered to conduct business in Illinois. From 2001 to 2005, PPI did, however, treat up to 1,500 Illinois residents per year. This number represented approximately 1.5% of the total number of patients seen by PPI. In addition, pursuant to review of PPI's corporate fund-raising database, a small number of Illinois residents were listed as participants. Moreover, from 2003 to 2007, advertisements for PPI appeared in the telephone books of four southern suburbs of Chicago, namely, Calumet City, Illinois; South Harvey, Illinois; Riverdale, Illinois; and Lansing, Illinois, plaintiff's hometown at the time in question. Further, over the

1-07-1442

course of five years, PPI employed eight Illinois residents.

Elizabeth Carroll, vice president of PPI's patient services, was deposed and testified that, in regard to the patient directory upon which its response was derived, the directory is continually updated to record the most current address information for patients, including those that moved, in order to provide patients with updates on any relevant medical data. Regarding the fund-raising database, Carroll testified that some of the Illinois residents and entities listed may have expressly requested to be included in fund-raising efforts. In addition, as with the patient directory, the fund-raising database is continually updated with the most current address information. Finally, with regard to the telephone book advertisements, Carroll testified that PPI was not involved in the placement of the advertisements; rather, the listings were included solely based upon the decision of the publishers.

A plaintiff bears the burden of establishing a *prima facie* basis for exercising a court's *in personam* jurisdiction over a defendant. Illinois Commerce Comm'n v. Entergy-Koch Trading, LP, 362 Ill. App. 3d 790, 795 (2005). A plaintiff's *prima facie* case may be rebutted where a defendant presents uncontradicted evidence that defeats jurisdiction. Entergy-Koch Trading, LP, 362 Ill. App. 3d at 795. When the trial court determines jurisdiction solely based upon documentary evidence, review is conducted *de novo*. Alderson v. Southern Co., 321 Ill. App. 3d 832, 846 (2001). In the instant case, limited discovery was conducted, including deposition testimony. Because there is no material dispute regarding those facts uncovered, merely a dispute regarding the legal conclusions to be drawn from those facts, we review the trial court's ruling *de novo*. Alderson, 321 Ill. App. 3d at 846.

1-07-1442

Section 2-209 of the Code, known as the long-arm statute, governs when Illinois courts have the power to exercise personal jurisdiction over an out-of-state defendant. See Commercial Coin Laundry Systems v. Loon Investments, LLC, 375 Ill. App. 3d 26, 29 (2007). In particular, subsection 2-209(a) describes 14 grounds under which specific jurisdiction arises and subsection 2-209(b) describes 4 grounds under which general jurisdiction arises. 735 ILCS 5/2-209(a), (b) (West 2004). However, exercise of any form of personal jurisdiction must comport with due process. Commercial Coin Laundry Systems, 375 Ill. App. 3d at 30.

Traditionally, Illinois courts employed a two-step analysis to determine whether the plaintiff established a *prima facie* case for personal jurisdiction by evaluating: (1) personal jurisdiction under the long-arm statute; and (2) due process under both the United States and Illinois Constitutions. Crum & Forster Specialty Insurance Co. v. Extended Stay America, Inc., 375 Ill. App. 3d 654, 660 (2007). In 1989, the legislature amended the long-arm statute to include subsection 2-209(c), known as a "catch-all" provision, which provides a court with personal jurisdiction based on "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2004); Kostal v. Pinkus Dermatopathology Laboratory, P.C., 357 Ill. App. 3d 381, 386 (2005). This subsection has since been treated as an independent basis for asserting *in personam* jurisdiction over a defendant; therefore, personal jurisdiction may be asserted so long as it does not offend the guarantees of due process provided by the Illinois and United States Constitutions. Alderson, 321 Ill. App. 3d at 856. When that occurs, the traditional two-step analysis is no longer necessary under the long-arm statute. Crum & Forster Specialty Insurance Co., 375 Ill. App. 3d at 660.

-4-

1-07-1442

Accordingly, once federal and state due process requirements have been met, analysis of the enumerated acts listed in the statute is wholly unnecessary. Kostal, 357 Ill. App. 3d at 387.[2] We, therefore, focus our analysis on whether the due process requirements have been satisfied.

Federal due process requires that the defendant has sufficient "minimum contacts" with the forum state such that the exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice. [Citation.]' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945). Moreover, the action must arise out of the defendant's contacts with the forum state to the extent that it is reasonable to require the defendant to litigate in the forum state. Crum & Forster Specialty Insurance Co., 375 Ill. App. 3d at 664, citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-85 (1985). In the same vein, Illinois due process requires that it be "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." Rollins, 141 Ill. 2d at 275. Although dependent on whether a court seeks to assert specific jurisdiction or general jurisdiction, the minimum contacts analysis requires that the

---

[2]Pursuant to Rollins v. Ellwood, 141 Ill. 2d 244 (1990), some courts have imposed a new two-step analysis on the basis that Illinois due process protections are "separate and independent" from federal due process protections, thereby theoretically creating a possibility that personal jurisdiction could be satisfied under the federal constitution, but the not the Illinois Constitution. See Kostal, 357 Ill. App. 3d at 387-88. We, however, have not discovered any cases where that circumstance has occurred. See also Kostal, 357 Ill. App. 3d at 388.

defendant engaged in some act "by which the defendant purposefully availed itself [or himself] of the privilege of conducting activities in the forum state, in order to assure that a nonresident will not be haled into a forum solely as a result of random, fortuitous, or attenuated contacts with the forum or the unilateral acts of a consumer or some other third person." Roiser v. Cascade Mountain, Inc., 367 Ill. App. 3d 559, 562 (2006), citing Burger King, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. 2183. In the context of corporations, specific jurisdiction may be asserted when the suit directly arises out of or is connected to the defendant's purportedly wrongful acts within the forum state and general jurisdiction applies when the defendant has continuous and systematic business contacts within the forum state. Entergy-Kock Trading, LP, 362 Ill. App. 3d at 796.

Defendant contends that the trial court erroneously determined that personal jurisdiction was proper. On appeal, plaintiff claims that she established specific jurisdiction based upon subsection 2-209(a)(2) of the Code (735 ILCS 5/2-209(a)(2) (West 2004)) because defendant committed a tort in Illinois. More specifically, plaintiff developed a blood clot after taking the prescribed birth control pills for approximately two months and the injury was sustained in Illinois. In addition, plaintiff claims that she established general jurisdiction pursuant to subsection 2-209(b)(4) of the Code (735 ILCS 5/2-209(b)(4) (West 2004)) on the basis that defendant was doing business within Illinois. We discuss each claim in turn.

Specific jurisdiction arises when the defendant purposefully directed its activities to Illinois residents and injuries arose out of or were caused by those activities. Burger King Corp., 471 U.S. at 471, 85 L. Ed. 2d at 540, 105 S. Ct. at 2181. In determining whether the exercise of

personal jurisdiction was proper on the basis that PPI committed a tort in Illinois, we find the out-of-state doctor and professional malpractice line of cases particularly instructive.[3] See Yates v. Muir, 112 Ill. 2d 205 (1986) (and cases cited therein). Those cases developed special rules to ensure that jurisdiction is exercised only when the defendant purposefully availed itself of the privileges of conducting activities in the plaintiff's state. Kostal, 357 Ill. App. 3d at 390. Essentially, this line of cases rejects the "portable tort" theory developed in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432 (1961), which held that the tortious act at issue occurred in Illinois because the place where the requisite injury occurred was the "last event" necessary to satisfy the tort and make the defendant liable, despite the fact that the defendant never entered the state. Gray, 22 Ill. 2d at 435. However, the seminal case rejecting the "portable tort" theory explained that "[i]n the case of personal services [the] focus must be on the place where the services are rendered, since this is the place of the receiver's *** need." Wright v. Yackley, 459 F.2d 287, 289 (9th Cir. 1972). The Wright court added:

> "it is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available." Wright, 459 F.2d at 289-90.

---

[3]For purposes of jurisdiction, the commission of a tort need not fit within the technical definition of a tort so long as there is a breach of an alleged duty resulting in liability. Zazove v. Pelikan, Inc., 326 Ill. App. 3d 798, 803 (2001).

1-07-1442

A Washington court further explained that personal services rendered by attorneys, physicians, dentists, hospitals and accountants in their local office are not directed at any particular place, but are simply intended to impact the individual who sought out the services. Hogan v. Johnson, 39 Wash App. 96, 101, 692 P.2d 198, 201 (1984), citing Gelineau v. New York University Hospital, 375 F. Supp. 661, 667 (D. N.J. 1974). Accordingly, a plaintiff who travels out of state to seek personal assistance and then travels back to the forum state should expect to travel back to the state of service in order to lodge any related complaint.

In the case at bar, plaintiff admittedly traveled into Indiana and sought treatment at PPI's Hammond location. The uncontradicted facts demonstrate that plaintiff was examined and was prescribed the birth control pills while in Indiana. Although plaintiff's resulting blood clot was discovered while in Illinois, we cannot say that her unilateral activity entitles the trial court to exercise specific jurisdiction over defendant. Other than the unrequested telephone book advertisement, plaintiff fails to provide any support that *her* injuries arose from or related to activities that defendant purposefully directed to Illinois residents. *Cf.* Kostal, 357 Ill. App. 3d at 396 (personal jurisdiction was proper where the defendants inserted themselves into the patient's treatment by exchanging diagnostic materials and providing services through the mail with knowledge that the patient and the patient's Illinois physician would rely on those services). We, therefore, conclude that it would not be reasonable to force PPI to litigate the underlying claim in Illinois where plaintiff failed to establish the requisite minimum contacts.

We find that the instant case is distinguishable from Calder v. Jones, 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984), and Janmark, Inc. v. Reidy, 132 F.3d 1200 (7th Cir. 1997),

1-07-1442

which broadly interpreted <u>Calder</u>.[4]  In <u>Calder</u>, the Supreme Court held that a California court had personal jurisdiction over the Florida defendants based upon a libelous article written about the plaintiff, an actress who lived and worked in California.  <u>Calder</u>, 465 U.S. at 788, 79 L. Ed. 2d at 812, 104 S. Ct. at 1486.  The Supreme Court determined that the minimum contacts analysis was satisfied because California was the "focal point both of the story and of the harm suffered."  <u>Calder</u>, 465 U.S. at 789, 79 L .Ed. 2d at 812, 104 S. Ct. at 1486. .  Moreover, the Supreme Court concluded that the defendants allegedly committed an intentional tort with knowledge that the plaintiff would be injured in her home state, the location of the magazine's largest circulation, and, therefore, they should have reasonably anticipated being haled into court in California.  <u>Calder</u>, 465 U.S. at 789-90, 79 L. Ed. 2d at 812-13, 104 S. Ct. at 1487.  In <u>Janmark</u>, the Seventh Circuit relied on the <u>Calder</u> "effects" test to hold that personal jurisdiction was proper in Illinois because the injury occurred in Illinois when a client stopped purchasing the plaintiff's product as a result of the defendant's allegedly tortious actions.  <u>Janmark</u>, 132 F.2d at 1202.

In sharp contrast to <u>Calder</u> and <u>Janmark</u>, even discounting the fact that no intentional tort is at issue here, PPI's alleged tortious actions were not directed at Illinois.  Keeping in mind the cornerstone of personal jurisdiction, due process still requires that the defendant purposefully established minimum contacts in Illinois.  <u>Wallace</u>, 778 F.2d at 394-95 (the so-called " 'effects

---

[4]<u>Calder</u> is limited by its facts and has been consistently criticized.  See, *e.g.*, <u>Scotts Co. v. Aventis, S.A.</u>, 145 Fed. Appx. 109, 113 n.1 (6th Cir. 2005); <u>Far West Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1079 (10th Cir. 1995); <u>Wallace v. Herron</u>, 778 F.2d 391 (7th Cir. 1985); <u>Jackson v. California Newspapers Partnership</u>, 406 F. Supp. 2d 893, 896-97 (N.D. Ill. 2005).

test' is merely another way of assessing the defendant's relevant contacts with the forum State"). As we determined prior, PPI did not have sufficient minimum contacts to establish specific personal jurisdiction.

Next, we turn to plaintiff's argument on appeal that general jurisdiction was proper. As previously stated, general jurisdiction may be exercised over a nonresident only when the nonresident has continuous and systematic business contacts within the forum state. Entergy-Kock Trading, LP, 362 Ill. App. 3d at 796. In Illinois, when seeking to exert personal jurisdiction over a corporation, the corporation must be " 'present and doing business' " within the state. Braband v. Beech Aircraft, Corp., 72 Ill. 2d 548, 554-55 (1978). To be considered "doing business" for purposes of general jurisdiction, the nonresident defendant must carry out business within the state on a basis that is not occasional or casual, but rather with permanence and continuity. Roiser, 367 Ill. App. 3d at 562, citing Cook Associates, Inc. v. Lexington United Corp., 87 Ill. 2d 190, 201 (1981). The "doing business" standard is rather high (Roiser, 367 Ill. App. 3d at 563) because general jurisdiction establishes that the corporation "has [effectively] taken up residence in Illinois and, therefore, may be sued on causes of action both related and unrelated to its activities in Illinois." Riemer v. KSL Recreation Corp., 348 Ill. App. 3d 26, 35 (2004).

The record demonstrates that approximately 1,500 Illinois residents a year over the course of 5 years were patients at PPI and an unknown number of Illinois residents were listed on PPI's fund-raising database. Carroll's uncontradicted testimony, however, established that the information for those individuals listed as Illinois patients and potential donors was constantly

updated, thereby creating a potential situation where former Indiana residents remained in the system despite moving to Illinois. Moreover, without contest, Carroll described that PPI had no part in the placement of its information in several Illinois telephone books. We find that, at best, these activities amount to mere solicitation, which is an insufficient basis to establish that PPI subjected itself to the jurisdiction of Illinois. Roiser, 367 Ill. App. 3d at 564; see Riemer, 348 Ill. App. 3d at 36 ("even substantial earnings have not been considered indicative of whether a corporation has established a permanent and continuing relationship with the forum"). Although not dispositive, it is additionally persuasive that PPI did not maintain an office or conduct sales in Illinois; rather, PPI's business was conducted exclusively in Indiana. Huck v. Northern Indiana Public Service Co., 117 Ill. App. 3d 837, 840 (1983). Overall, the evidence does not establish that PPI systematically and continually transacted business in Illinois. Further, plaintiff's attempt to bolster her argument in favor of personal jurisdiction based upon the fact that PPI has employed a number of Illinois residents is completely without merit. Accordingly, the requisite minimum contacts have not been established for general personal jurisdiction.

Accordingly, we reverse the judgment of the circuit court of Cook County.

Reversed.

QUINN, P.J., and THEIS, J. concur.