2023 IL App (1st) 220561-U

SIXTH DIVISION
May 5, 2023

No. 1-22-0561

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| RICHARD T. PEARSON, Individually and on Behalf of His IRA, | ) ) ) | |
| Plaintiff, | ) ) | Appeal from the Circuit Court of |
| v. | ) ) | Cook County. |
| RICHARD ZAEHRINGER, | ) ) | |
| Defendant and Third-Party Plaintiff-Appellee, | ) ) ) | No. 20 L 011647 |
| v. | ) ) | Honorable James E. Snyder, |
| UPSTATE LAW GROUP, LLC; CANDY KERN FULLER; and HOWARD E. SUTTER III, | ) ) ) | Judge Presiding. |
| Third-Party Defendants-Appellants. | ) ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Tailor concurred in the judgment.

## ORDER

¶ 1    *Held*: Where third-party defendants' motion to dismiss appears to have been ruled on prematurely, we reverse the circuit court's order denying it and remand this matter for a ruling following the completion of discovery and briefing on the issue of personal jurisdiction.

¶ 2    This is an interlocutory appeal by permission from the circuit court's denial of a motion to dismiss for lack of personal jurisdiction. The plaintiff in the underlying suit, Richard Pearson, is a Pennsylvania resident who alleged he was convinced by defendant and third-party plaintiff Richard Zaehringer, a resident of Illinois, to invest his savings in an annuity scam. Mr. Zaehringer sued third-party defendants Upstate Law Group (ULG), Candy Kern, and Howard Sutter, all based in South Carolina, for contribution, alleging that it was they who perpetrated and promoted the investment scheme.

¶ 3    Third-party defendants deny that Illinois courts can lawfully exercise jurisdiction over them in this matter, and accordingly moved to dismiss the claims against them under section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301) (West 2020)). The circuit court allowed limited discovery on the question of personal jurisdiction and set a briefing schedule on the motion. Briefing was delayed, however, as the parties became embroiled in discovery disputes, and the circuit court ultimately denied the motion to dismiss before those disputes were resolved and before a response or reply had been filed.

¶ 4    For the reasons that follow, we reverse the circuit court's order denying third-party defendants' motion to dismiss and remand this matter for completion of discovery and resolution of the issue of personal jurisdiction based on a more complete record.

¶ 5                                  I. BACKGROUND

¶ 6                          A. The Underlying Complaint

¶ 7    Mr. Pearson alleged in his complaint, filed on October 30, 2020, that in 2015 and 2016 Mr. Zaehringer, an Illinois insurance agent, visited him at his home in Pennsylvania and "aggressively solicited" him to invest his savings, totaling nearly $800,000, in a "multi-generational legacy plan" offered by Penn Life Mutual Insurance Company (Penn Life). Mr. Zaehringer promoted the plan

as a safe investment that would be "96% liquid from day one" and tax free. Mr. Pearson's IRA savings would be held by an entity called IRA Services, and Mr. Zaehringer would be authorized to draw from that account to make monthly premium payments on a $2 million Penn Life insurance policy naming Mr. Pearson as beneficiary.

¶ 8    Mr. Pearson alleged that, unbeknownst to him, his funds were disbursed from IRA Services to a second entity, Performance Arbitrage Company, Inc. (PAC), which provides high-interest loans to veterans and other cash-poor beneficiaries of federal pensions. These loans are supposed to be repaid out of pension payments. Mr. Pearson believed that his signature was forged on a number of agreements to make these loans in return for pension payments. When the pension payments were not sufficient to make the full payment due to Mr. Pearson, the IRA Services account did not pay the full amount of Mr. Pearson's monthly premiums. Mr. Pearson alleged that he had to liquidate the insurance policy at a loss of over $600,000, as a result of this scheme. Mr. Pearson brought claims against Mr. Zaehringer for breach of fiduciary duty, violation of Pennsylvania's consumer fraud law, fraudulent misrepresentation, and negligence.

¶ 9    Mr. Zaehringer unsuccessfully moved to dismiss the complaint against him for failure to state a cause of action on which relief could be granted. In his answer to the complaint, he denied every material allegation except that he had explained a "multi-generational legacy" plan offered by Penn Life to Mr. Pearson and asserted affirmative defenses not relevant to this appeal.

¶ 10                    B. The Third-Party Complaint

¶ 11    On May 24, 2021, Mr. Zaehringer filed the third-party complaint that is the subject of this appeal, seeking contribution from ULG, a South Carolina law firm organized as a limited liability company, and its principals, Candy Kern and Howard Sutter, both citizens and residents of South Carolina. Mr. Pearson alleged that "through various agents"—including PAC, Life Funding

Options, and Financial Products Distributors, LLC—Ms. Kern and Mr. Sutter "devised and operated the pension income stream program at issue in this case." According to Mr. Zaehringer, third-party defendants used "their firm's IOLTA account as the conduit through which the other parties channel[ed] their monies" and served as the "legal muscle," facilitating the scheme by assisting in the execution of the pension-income purchase contracts, suing defaulting pensioners to enforce those agreements, and opposing attempts to discharge debt through bankruptcy.

¶ 12    Mr. Zaehringer maintained that he "had no dealings" with ULG, Ms. Kern, or Mr. Sutter and "did not participate in any way in preparing the marketing materials, approving applications, drafting, or executing any of the contracts associated with the pension stream transactions or facilitating the exchange of funds." According to his complaint, his role in the pension-stream contracts "was limited to referring prospective applicants to M. David Woodard and Financial Products Distributors, LLC." Mr. Zaehringer alleged that once he "identified and referred a prospective applicant, he had no further involvement in the transaction."

¶ 13    As bases for the court's personal jurisdiction over third-party defendants, Mr. Zaehringer alleged that they knew or should have known that he resided in the State of Illinois and transacted business here, that they themselves transacted business in the State of Illinois, that they breached fiduciary duties in the State of Illinois, and that they committed torts in the State of Illinois. He alleged that third-party defendants "made material omissions and false representations in the marketing materials" by, among other things:

"a. failing to disclose that the other parties they were involved with had been the subject of multiple enforcement actions and cease-and-desist orders issued by several state regulatory authorities;

b. failing to disclose that the pension income stream contracts were of questionable

4

legality;

\* \* \*

e. falsely representing that the due diligence process ensured that only sellers most able to maintain their financial commitment were approved; and

f. failing to disclose that up to 80 or 90 percent of sellers defaulted on their obligations under the pension income stream contracts."

These were, according to Mr. Zaehringer, "material omissions and false representations that a reasonable person in [his] position would have relied upon, and which he did in fact rely upon, in determining whether to refer clients to Woodard and Financial Products Distributors \*\*\* and in his dealings with [Mr. Pearson]." He maintained that third-party defendants "intended that [he] rely on their representations in his dealings with [Mr. Pearson]."

¶ 14     On September 30, 2021, third-party defendants moved to dismiss the third-party complaint for a lack of personal jurisdiction over them. They acknowledged that "twelve (12) income stream contracts totaling $720,274.30 \*\*\* were sold to Plaintiff Pearson's self-directed IRA by [Mr. Zaehringer]" and noted that Mr. Zaehringer purported to witness Mr. Pearson's signature on those documents and netted significant commissions as a result of those sales. They attached to their motion more or less identical affidavits emphasizing the South Carolina nature of ULG (which was by then no longer in existence) and of both individual third-party defendants' law training and practice. They averred that they had never traveled to Illinois to promote ULG's business, advertised the firm's services in Illinois, registered to do business in Illinois, or "actively sought" business for ULG from individuals in the State of Illinois. They also stated that, to the best of their knowledge, they had never had "any dealings" with Mr. Pearson or Mr. Zaehringer "prior to the execution of the above-referenced contracts" and that Mr. Woodard, referred to in the complaint,

was last known to reside in Texas.

¶ 15    Third-party defendants argued, based on this, that Mr. Zaehringer, who bore the burden of showing the grounds for Illinois's jurisdiction over them as nonresidents, had failed to do so. They argued that his accusations about tortious conduct were conclusory and that he had not alleged that they had purposefully availed themselves of Illinois's law and territory in any way.

¶ 16    The circuit court allowed written discovery on the issue of personal jurisdiction, to be completed by December 13, 2021, and gave Mr. Zaehringer four weeks beyond that deadline, or until January 10, 2022, to respond to third-party defendants' motion. Oral argument on the motion was to take place on January 17, 2022.

¶ 17                    C. Jurisdictional Discovery and the Court's Ruling

¶ 18    Mr. Zaehringer served third-party defendants with interrogatories and requests for production in October and November of 2021. They did not answer, and on December 21, 2021, Mr. Zaehringer moved to compel them to respond.

¶ 19    Third-party defendants then provided a set of responses to the interrogatories on December 30, 2021, and to his requests for production on December 31, 2021. They objected to delivering documents from their IOLTA account showing all persons with Illinois addresses who deposited pension funds in it, though they did acknowledge that one Illinois resident deposited funds that were "involved in the Pearson purchases." They objected to providing a variety of materials involving their dealings with Illinois residents as subject to attorney-client privilege. And they acknowledged acting as an escrow agent for an Illinois resident who had had some dealings with Mr. Zaehringer, though they maintained this was wholly unrelated to Mr. Pearson's dealings.

¶ 20    Third-party defendants described their relationship with PAC, the entity that sold the pension-income loan contracts, as one where they acted as PAC's corporate counsel, and

maintained that all documents relating to PAC were therefore privileged. They denied that Mr. Woodard ever acted as their agent, explained that they performed legal services for his company, Financial Product Distributors, and stated that the details of such representation were likewise protected by attorney-client privilege.

¶ 21 Mr. Zaehringer objected to third-party defendant's responses to his discovery. The parties conferred pursuant to Illinois Supreme Court Rule 201(k) (eff. May 29, 2014) in January and February, and on February 10, 2022, Mr. Zaehringer amended his motion to compel, arguing that third-party defendants' privilege log detailing the withheld documents was "grossly deficient."

¶ 22 On March 16, 2022, the circuit court entered an order requiring third-party defendants to respond to the amended motion to compel by March 18, giving Mr. Zaehringer until March 25 to file a reply, and setting a status hearing and argument on the motion for March 29, 2022. On March 18, third-party defendants responded by stating that Ms. Kern's poor health prevented her from amending the privilege log or further responding to Mr. Zaehringer's discovery requests.

¶ 23 On March 29, 2022, the date set for argument on the motion to compel, the court entered a one-page order (1) finding third-party defendants in default for failing to comply with the court's discovery order and barring them from introducing evidence at trial, (2) denying their motion to dismiss for lack of personal jurisdiction, (3) giving them 21 days to file their answer to the third-party complaint (which they did on April 19, 2022), and (4) continuing the motion to compel. The order did not explain the court's reasoning for any of these rulings and neither party has provided us with a transcript of that court date.

¶ 24 Thus, it appears from the record that the circuit court ruled in Mr. Zaehringer's favor without having ruled on his motion to compel and without giving Mr. Zaehringer a chance to fully respond to the motion to dismiss. Third-party defendants then petitioned for and were granted

leave to bring this interlocutory appeal.

¶ 25                              II. JURISDICTION

¶ 26    This is an interlocutory appeal by permission from the circuit court's March 29, 2022, denial of third-party defendants' motion to dismiss for lack of personal jurisdiction. Third-party defendants filed a timely petition for leave to appeal that ruling on April 26, 2022, which this court granted on May 31, 2022. Our jurisdiction over this appeal is pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. Oct. 1, 2020).

¶ 27                                III. ANALYSIS

¶ 28    On appeal, third-party defendants argue that their motion to dismiss for lack of personal jurisdiction was erroneously denied. We do not have a sufficient factual record to address the merits of this argument. Because on this record it appears that the circuit court's order denying the motion to dismiss was premature, we reverse and remand for the completion of the jurisdictional discovery and briefing originally ordered.

¶ 29                           A. Supreme Court Rules

¶ 30    Third-party defendants never filed a reply brief and so they made no objection to Mr. Zaehringer's response brief. However, his brief does not comply with Illinois Supreme Court Rule 328 (eff. July 1, 2017) or Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020).

¶ 31    Rule 328 provides that "[a]ny party seeking relief from the reviewing court before the record on appeal is filed shall file *** an appropriate supporting record containing enough of the trial court record to show an appealable order or judgment, a timely filed and served notice of appeal (if required for appellate jurisdiction), and any other matter necessary to the application made." *Id.* The supporting record "must be authenticated by the certificate of the clerk of the trial court or by the affidavit of the attorney or party filing it." *Id.*

¶ 32 Here, third-party defendants filed a supporting record that included, among other things, the circuit court's order denying their motion to dismiss and the briefing on that motion, accompanied by the affidavit of their counsel authenticating the contents as true and correct copies of the relevant pleadings, orders, and motions filed in the circuit court. That was in accordance with Rule 328.

¶ 33 Several weeks later, Mr. Zaehringer filed an "Additional Supporting Record." This is also appropriate under Rule 328. However, the "Additional Supporting Record" included discovery requests and documents produced during discovery, with no indication whether any of those documents was ever presented to the circuit court, in connection with briefing on the motion to dismiss that is at issue in this appeal or otherwise. Indeed, in his accompanying affidavit, Mr. Zaehringer's attorney averred only that the documents were true and correct copies of documents received in discovery. Because there is no indication that these documents were part of the record before the circuit court, they are not properly part of the record before this court.

¶ 34 Illinois Supreme Court Rule 341 additionally provides that all briefs must contain "reference to the pages of the record on appeal" in support of any factual statements or arguments. Ill. S. Ct. R. 341(h)(6)(7), (i). However, in his brief, Mr. Zaehringer, as the appellee, cited and relied on two documents that were not part of either the supporting record or the additional supporting record that he had filed. Mr. Zaehringer never sought leave to supplement the record with these documents. Rather than cite the record, he has simply cited the appendix page of his own brief when referencing these documents. This violates the requirement that factual citations be to the record. Those documents are also not properly before us on this appeal.

¶ 35 We raise these concerns to emphasize that we can only consider material that was before the circuit court and that the parties have the burden of demonstrating to us that everything they

rely on in this court was also before the circuit court. We have rendered our decision based on our review of the material that meets these requirements. As we explain, our view based on the portion of the record properly before us is that jurisdictional discovery should have been completed before a decision was rendered. For the reasons we explain, we remand for continuation of that discovery and a second ruling. In any further briefing in this case, we expect the parties to conform to all applicable supreme court rules.

¶ 36    B. Third-Party Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

¶ 37    Third-party defendants brought their motion to dismiss under section 2-301 of the Code, which provides, with certain exceptions not relevant here, that "[p]rior to the filing of any other pleading or motion ***, a party may object to the court's jurisdiction over the party's person *** by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding." 735 ILCS 5/2-301(a) (West 2020). "Unless the facts that constitute the basis for the objection are apparent from papers already on file in the case, the motion must be supported by an affidavit setting forth those facts." *Id.* In disposing of such a motion, "the court shall consider all matters apparent from the papers on file in the case, affidavits submitted by any party, and any evidence adduced upon contested issues of fact." *Id.* § 2-301(b). Where the court's decision is based solely on documentary evidence, our review is *de novo*. *Madison Miracle Productions, LLC v. MGM Distribution Co.*, 2012 IL App (1st) 112334, ¶ 34. If there are disputes regarding issues of fact on which personal jurisdiction depends, however, the court must conduct an evidentiary hearing to resolve those disputes. *Id.* ¶ 35.

¶ 38    Personal jurisdiction is the power of a court to render a binding judgment on a particular defendant. The constitutional requirement of due process limits the ability of a state's court system to exercise jurisdiction over a defendant who lacks some minimum connections with that forum.

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). It is a protection of the defendant's liberty. *Insurance Company of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). A state may exercise jurisdiction over an out-of-state entity, though, if the entity has maintained "minimum contacts" with the forum state such that haling it into court would not offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 320. When an entity purposefully avails itself of the benefit of the forum state's laws by conducting business there, it may then be subject to the authority of that state's courts for claims against it. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

¶ 39    In keeping with these principles, courts may exercise personal jurisdiction over out-of-state defendants under two theories: general and specific jurisdiction. General jurisdiction exists when an entity is "at-home" in a state and is therefore amenable to suit for *all claims* against it. See *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign *** corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").

¶ 40    A defendant may also be amenable to suit under the theory of specific jurisdiction when the claim "arises from" its contacts with the forum state. Specific jurisdiction requires a showing of minimum contacts that demonstrate the defendant purposefully directed its activities to the forum state, coupled with a multifactored "fair play and substantial justice" analysis, which takes into account (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the "shared interest of the several States in furthering fundamental substantive social policies."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 477 (1985).

¶ 41    Illinois's long-arm statute explicitly makes use of the full breadth of personal jurisdiction that due process allows. See 735 ILCS 5/2-209(c)(West 2020) (providing that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States"). Thus, the statute's requirements are said to merge with the constitutional principles set out above. *Russell v. SNFA*, 2013 IL 113909, ¶ 30.

¶ 42    The fact that a defendant's actions affected a plaintiff in or connected to Illinois is not sufficient to establish personal jurisdiction over that defendant. The inquiry, rather, must take into account "the relationship among the defendant, the forum, and the litigation" (internal quotation marks omitted) and how the defendants availed themselves of the forum state. *Brook v. McCormley*, 873 F.3d 549, 552-53 (7th Cir. 2017) (citing *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). As the cases demonstrate, this analysis is fact-sensitive.

¶ 43    We have held that personal jurisdiction over a defendant may not be conferred by the unilateral actions of the *plaintiff. Morris v. Halsey Enterprices, Ltd.*, 379 Ill. App. 3 574, 580 (2008). Calls and correspondence sent *to* a defendant *from Illinois*, for example, may not be a basis for the assertion of jurisdiction over that defendant. *City of East Moline v. Bracke, Hayes & Miller*, 133 Ill. App. 3d 136, 140 (1985).

¶ 44    Here, Mr. Zaehringer bears the burden of establishing a *prima facie* case that Illinois jurisdiction over third-party defendants would accord with due process. *Russell*, 2013 IL 113909, ¶ 28. He could only show general jurisdiction by showing that third-party defendants' contacts with Illinois were so "continuous and systematic" that it could fairly be said that they are "at home" in Illinois. *Goodyear,* 564 U.S. at 919. He could show specific jurisdiction if this case

arises from contacts third-party defendants established with Illinois. As the discussion above shows, this is a fact-sensitive question that requires development of a clear record, full briefing, and, where appropriate, jurisdictional discovery.

¶ 45    Mr. Zaehringer has alleged torts committed against him by third-party defendants. A tort directed into or "aimed at" a state may be the basis for specific jurisdiction in that state. *Calder v. Jones*, 465 U.S. 783, 789–91 (1984). But the question of whether a tort was directed into a state is also fact-sensitive: to establish that conduct was "purposefully directed," the plaintiff must show that an intentional act was expressly aimed at Illinois with knowledge that injury would be felt here. See *id.* (finding jurisdiction where the defendants were alleged to have defamed someone they knew lived in the forum state, with knowledge that the effects of the defamation would be felt there). Conversely, if the commission of the tort was not directed at Illinois, the fact that the effects were felt here cannot form the basis for personal jurisdiction. See *Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill. App. 3d 243, 248, 250 (2007) (finding no jurisdiction where the claim involved a blood clot that developed in Illinois following a procedure at an Indiana clinic.)

¶ 46    From what we can glean from the pleadings here, various agreements may have existed between third-party defendants and Mr. Pearson, between them and various intermediaries, and possibly between them or their agents and Mr. Zaehringer. It is the specifics of these agreements, how they came about, and the activities underlying the tort claims that will substantiate "the relationship among the defendant, the forum, and the litigation" (internal quotation marks omitted) that Mr. Zaehringer will need to show to establish a basis for jurisdiction. *Brook*, 873 F.3d at 552.

¶ 47    Third-party defendants insist both that Mr. Zaehringer's jurisdictional allegations, made on information and belief, were insufficient to carry his burden and that he failed to rebut their uncontroverted affidavits with any of his own. But Mr. Zaehringer was clearly waiting to respond

to their motion to dismiss until after he received information through discovery resolving some of the unanswered questions posed above. For reasons that are not clear from the record, the circuit court ruled in his favor before his discovery requests were fully answered. Mr. Zaehringer cannot be expected to object to a ruling in his favor. However, in order to defend that ruling on appeal, Mr. Zaehringer needs the discovery that he sought below.

¶ 48                                                    IV. CONCLUSION

¶ 49     For all of the above reasons, we reverse the circuit court's order denying third-party defendants' motion to dismiss for lack of personal jurisdiction. We remand this matter for the circuit court to decide the motion after discovery and briefing on the issue of personal jurisdiction is complete.

¶ 50     Reversed and remanded, with directions.