2016 IL App (1st) 151909

No. 1-15-1909

Fifth Division
August 26, 2016

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| M.M., a Minor, by and Through Audrey Meyers, Her Mother and Next Friend; A.H., a Minor, by and Through Dawn Hinton, Her Mother and Next Friend; P.M., a Minor, by and Through Linda Butler, His Mother and Next Friend; H.C., a Minor, by and Through Amy Christy, Her Mother and Next Friend; H.H., a Minor, by and Through Kristen Hozempa, His Mother and Next Friend; A.K., a Minor, by and Through Kathryn Keady, His Mother and Next Friend; C.S., a Minor, by and Through Stacey Schutte, Her Mother and Next Friend; and C.E., a Minor, by and Through Shannon Emery, His Mother and Next Friend, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | No. 2014 L 006985 |
| Plaintiffs-Appellees, | ) | |
| | ) | The Honorable |
| v. | ) ) | Larry G. Axelrood, Judge Presiding. |
| GLAXOSMITHKLINE LLC, f/k/a SmithKlineBeecham Corporation, d/b/a SmithKlineBeecham; WOLTERS KLUWER HEALTH, INC.; WOLTERS KLUWER UNITED STATES, INC.; and WALGREENS COMPANY, | ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) ) | |
| (GlaxoSmithKline LLC, f/k/a SmithKlineBeecham Corporation, d/b/a SmithKlineBeecham, Defendant-Appellant). | ) ) ) | |

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    In this lawsuit, eight minor plaintiffs from six states, including Illinois, filed a products liability suit in the circuit court of Cook County against defendant GlaxoSmithKline LLC (GSK), a pharmaceutical company, and others. The suit alleges that the minor plaintiffs suffered catastrophic birth defects as a result of their mothers' ingestion of defendant GSK's psychiatric drug, Paxil. Defendant GSK moved to dismiss the claims of the out-of-state plaintiffs due to lack of personal jurisdiction, arguing that the court lacked both general and specific jurisdiction.

¶ 2    However, the trial court found that Illinois had specific personal jurisdiction over defendant GSK based on (1) defendant GSK's substantial in-state contacts, namely its contracts with 17 Illinois physicians to run 18 to 21 clinical trials on Paxil in Illinois as part of a multicenter study and (2) the fact that plaintiffs' claims arose from defendant GSK's acts or omissions related to those trials. On this permissive interlocutory appeal, pursuant to Illinois Supreme Court Rule 306(a)(3), defendant GSK argues that the trial court erred in denying its motion to dismiss the out-of-state plaintiffs' claims due to lack of personal jurisdiction. Ill. S. Ct. R. 306(a)(3) (eff. July 1, 2014) ("[a] party may petition for leave to appeal *** from an order of the circuit court denying a motion to dismiss on the grounds that defendant has done nothing which would subject defendant to the jurisdiction of the Illinois courts"). For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4                                    I. Parties

¶ 5    The 16 plaintiffs in this case are eight minor plaintiffs and their mothers. In the discussion below, we refer to a minor plaintiff and his or her mother as a "mother-child pair."

Two pairs are residents of Illinois, two pairs are residents of Florida, and the four remaining pairs reside in Colorado, Virginia, Michigan, and Wisconsin, respectively.

¶ 6    Defendant GSK is a limited liability company incorporated in Delaware, and its sole member, GSK Holdings Inc., is a Delaware corporation with its principal place of business in Delaware. Defendant GSK also has corporate and administrative headquarters in Pennsylvania and North Carolina.

¶ 7                                    II. Complaint

¶ 8    On July 2, 2014, plaintiffs filed a complaint that names the following as defendants: (1) GSK (f/k/a SmithKlineBeecham Corporation, d/b/a SmithKlineBeecham), the pharmaceutical company that designed, tested, manufactured, and sold the drug Paxil; (2) Wolters Kluwer Health, Inc. (WKH), and Wolters Kluwer United States, Inc. (WKUS), the companies that provided drug information about Paxil to pharmacies; and (3) Walgreen Co. (Walgreens), the company that sold Paxil to some of the plaintiffs. Only GSK brings this appeal. Against defendant GSK, plaintiffs' complaint sets forth six counts: (1) strict liability and failure to warn, (2) strict products liability and design defect, (3) negligence, (4) breach of implied warranty, (5) breach of express warranty, and (6) negligent misrepresentation and concealment.

¶ 9    Plaintiffs claim that the mothers' ingestion of Paxil—a branded paroxetine prescription drug that treats depression, obsessive compulsive disorder, and anxiety—caused catastrophic congenital birth defects, including heart abnormalities. Plaintiffs allege that the design of Paxil, its inadequate warnings, and the manner in which its risks were communicated to the mothers, rendered the drug defective. Moreover, plaintiffs allege that "[d]efendants failed in their acts and omissions related to [Paxil] to use reasonable care to avoid injuring Plaintiffs" and "breached implied and express warranties accompanying [its] sale *** to each mother Plaintiff." Plaintiffs

allege that, collectively, the "defective nature of [Paxil] and Defendants' negligent conduct and breach of implied and express warranties proximately caused the minor Plaintiffs to develop birth defects" in the form of severe and permanent structural and functional abnormalities.

¶ 10       Plaintiffs allege that, at the time that each mother was prescribed Paxil, defendant GSK knew that there was a "significantly increased risk of congenital defects in babies whose mothers ingested" the drug. Such knowledge was "scientifically knowable through appropriate research and testing." Plaintiffs allege that the Food and Drug Administration (FDA) requires defendant GSK "to issue stronger warnings whenever there existed reasonable evidence of an association between a serious risk and [Paxil]." Despite defendant GSK's opportunity and duty to strengthen the drug's warnings, it "touted [Paxil] as being safe for pregnant women" and "aggressively *** promoted" the drug with labels that inadequately cautioned patients of the associated risk factors, thus, misrepresenting the drug to the public and to the medical profession. The complaint alleges that, had defendant GSK apprised plaintiffs' physicians of Paxil's risks, they would not have "prescribed or permitted" plaintiffs to use the drug. Likewise, had defendant GSK provided timely and "adequate warnings regarding the risks" of Paxil, plaintiffs would not have ingested the drug.

¶ 11       Plaintiffs also argue (1) that defendant GSK "failed to conduct appropriate tests to generate the necessary scientific data regarding the strength of the association between [Paxil] and birth defects"; (2) that defendant GSK "represented that Paxil was safe" when it knew or should have known of Paxil's dangerous impact on *in utero* development because such results were "scientifically knowable" through appropriate research; (3) that defendant GSK neglected to conduct adequate preclinical, clinical, and postmarketing surveillance to determine whether Paxil was safe for its intended or foreseeable uses; and (4) that defendant GSK "intentionally

conceal[ed]," "failed to disclose," and "negligently manipulated" clinical data that demonstrated Paxil's risks of birth defects. The complaint alleges that, as a direct result of defendant GSK's acts and omissions, plaintiffs sustained severe and permanent disfigurement, pain, suffering, and disability.

¶ 12                                    III. Motion to Dismiss

¶ 13          On August 7, 2014, defendant GSK moved to dismiss the out-of-state plaintiffs' claims due to a lack of personal jurisdiction, both general and specific, under sections 2-301 and 2-619 of the Code of Civil Procedure. 735 ILCS 5/2-301, 2-619 (West 2012). First, defendant GSK argued that it was not subject to general jurisdiction because Illinois is neither the state of its incorporation nor its principal place of business. Defendant GSK argued that it was not rendered "at home" in Illinois by its business activities here, under the United States Supreme Court's recent decision in *Daimler AG v. Bauman*, 571 U.S. ___, ___, 134 S. Ct. 746, 749 (2014).

¶ 14          Second, defendant GSK argued that Illinois lacks specific jurisdiction[1] because the out-of-state plaintiffs' claims did not arise from its Illinois activities. Moreover, defendant GSK claimed that its actions or omissions in Illinois were not the "but for" cause of the alleged harm: plaintiffs did not serve as study subjects in Illinois, did not receive Paxil prescriptions in Illinois, did not ingest Paxil in Illinois, and did not suffer injury from Paxil in Illinois. Finally, defendant GSK argued that the out-of-state plaintiffs may not create personal jurisdiction by tacking their claims onto those of the two Illinois plaintiffs.

---

[1]Specific jurisdiction requires a "showing that [(1)] the defendant purposefully directed its activities at the forum state and [(2)] the cause of action arose out of or relates to the defendant's contacts with the forum state." *Russell v. SNFA*, 2013 IL 113909, ¶ 40.

¶ 15                                    IV. Discovery

¶ 16          In the responses to plaintiffs' interrogatories, it was revealed that defendant GSK employed 16,323 people in the United States, 217 people who resided in Illinois, and it maintained an agent for service of process in Illinois. Defendant GSK's 2013 gross trade sales revenue for all products in the United States was $15,558,745,381.17, but it did "not collect *** data for gross revenue *** at the state level." Defendant GSK also disclosed that it currently has 184 sales representatives who market GSK's products in Illinois. Between the years 2000 and 2006, defendant GSK had anywhere between 79 and 121 employees marketing specifically Paxil in Illinois. Defendant GSK conducted 18 preclinical and clinical studies on Paxil in Illinois. An excerpt from one of these studies stated:

> "Subjects who became pregnant during the study were to be withdrawn from the study immediately. Subjects were instructed to notify the investigator if it was determined after completion of the study that they became pregnant either during the treatment phase of the study or within 30 days. Whenever possible, a pregnancy was to be followed to term, any premature terminations reported, and the status of the mother and child was to be reported to the sponsor after delivery."

¶ 17              V. Plaintiffs' Response to Defendant GSK's Motion to Dismiss

¶ 18          On November 21, 2014, plaintiffs filed a response to defendant GSK's motion to dismiss. While the out-of-state plaintiffs were not domiciled, prescribed Paxil, or injured in Illinois, they argued that their claims arose directly out of or related to defendant GSK's purposeful contacts with Illinois—that is, defendant GSK's 18 to 21[2] "inadequate and manipulated" Paxil clinical

---

[2]Plaintiffs' response states that "[i]t is not clear whether the three GSK-sponsored clinical trials conducted in Illinois *** are duplicative of, or in addition to, the eighteen such clinical trials GSK identified in its discovery answers."

trials in Illinois, conducted by 17 physicians in Illinois on a continuous basis spanning nearly two decades, from 1985 to 2003. Plaintiffs claimed that, in addition to these trials, defendant GSK collaborated on another Paxil clinical trial that occurred exclusively in Illinois between 2001 and 2003. Finally, plaintiffs argued that they have a separate and independent basis for exercising personal jurisdiction because defendant GSK's "conduct in Illinois is the same as its conduct in other states—and that conduct gave rise to the out-of-state Plaintiffs' claims." In other words, the nonresident plaintiffs' claims are based on "the same alleged wrongs as the claims of the Illinois resident Plaintiffs."

¶ 19       In their surresponse opposing defendant GSK's motion to dismiss, plaintiffs claimed: "[(1)] that GSK contracted with at least 17 principal investigators in Illinois to conduct clinical trials in Illinois regarding Paxil; [(2)] that the clinical trials resulted in at least eighteen pregnancies; [(3)] that GSK largely failed to track the outcomes of the pregnancies; [(4)] that of the few pregnancy outcomes that GSK did learn, there were fetal abnormalities, including a heart abnormality; and [(5)] that GSK failed to consider any of the pregnancy outcome data in assessing the safety of Paxil to unborn children."

¶ 20                                        VI. Argument

¶ 21       On June 10, 2015, the trial court heard argument on defendant GSK's motion to dismiss. Defense counsel argued that it was not subject to suit in Illinois, but only in Delaware, the state of defendant GSK's incorporation; in North Carolina and Pennsylvania, the states where defendant GSK "might be" "at home"; and in the states where the nonresident plaintiffs were injured. Defense counsel conceded purposeful contacts when he said, "no one disputes that GSK had purposeful contacts with Illinois."

¶ 22    However, defense counsel argued that plaintiffs' claims did not arise out of defendant GSK's contacts in Illinois, specifically, because Paxil clinical trials took place in 44 states and abroad. When the trial court asked defense counsel, "would [you] say that each of [the] 44 states would not be appropriate place[s] for [jurisdiction]?" he responded, "that would be our position." Defendant GSK argued that by emphasizing 17 of the 361 trials that it conducted in Illinois—or 100 of the 4272 clinical trial patients that took Paxil in Illinois—plaintiffs focused on "a tiny sliver" of the trials and drained all meaning from specific jurisdiction. The trial court responded: "What if [Illinois] had 1/10 of 1 percent [of the total trials], but it was that data that skewed the entire interpretation of the tests? How do I know? What's the magic number *** of [trials] that have to be conducted in Illinois in order to have specific jurisdiction?" "[Am I] trying to figure out where the best location for this litigation is, or whether or not there's a significant nexus to Illinois?"

¶ 23    Neither defense counsel nor plaintiffs' counsel were able to suggest a bright-line test for the number of Illinois trials that would give rise to personal jurisdiction in Illinois, but defense counsel argued that 17 trials was insufficient, whereas plaintiffs' counsel argued them sufficient. The trial court stated there was "no definitive number," so it "must look at it in terms of a pleading." Finally, defense counsel argued that plaintiffs' doctors and witnesses are out-of-state, but the trial court replied: "We have out of state witnesses every day."

¶ 24    In reply, plaintiffs argued that the "arising from" and "related to" standard is "lenient and flexible." Plaintiffs' claims arose from inadequate Paxil trials conducted in Illinois because the Illinois data "was aggregated with data from [the] other sites to reach statistical significance" and "the record compels the inference that the Illinois principal investigators had input into, and exercised control over, the overall design study protocol and analysis of the aggregate data."

However, plaintiffs stressed that they "don't have to prove on this motion *** whether the Illinois clinical trials were defective." They must only "make a *prima facie* case of personal jurisdiction." Plaintiffs argued that, by contracting with Illinois physicians to run clinical trials on Paxil in Illinois, defendant GSK purposefully availed itself of the state's benefits and that their claims arose directly from defendant GSK's collective omissions in those trials.

VII. Trial Court's Order

On June 10, 2015, the trial court denied defendant GSK's motion, finding "[t]hat by contracting the principal investigators in Illinois to conduct clinical trials regarding Paxil, the defendant did purposefully avail itself [of] the privilege of conducting activities within Illinois." "[S]pecific jurisdiction exists when *** the cause of action arises out of defendant's contacts with the foreign state." Plaintiffs "assert that defendant failed to conduct appropriate tests to generate the necessary scientific data regarding the strength of the association between this drug and birth defects" and "may have failed to adequately interpret or *** collect *** and these clinical trials occurred in Illinois from 1985 to 2003." The trial court found that the "substantial contacts the defendant purposely engaged in and directed to Illinois *** which the plaintiffs['] claim[s] relate to or arise from *** satisfy both *** federal and Illinois due process." However, the trial court stated: "I don't think there is a bright line [test] for me." Earlier during argument, the trial court stated, "if it goes up and case law is made, it will give us a better understanding and better standard."

VIII. Petition for Leave to Appeal

Accordingly, on July 10, 2015, defendant GSK timely filed a petition for leave to appeal the trial court's denial of the motion to dismiss for lack of personal jurisdiction. GSK filed the petition pursuant to Illinois Supreme Court Rule 306(a)(3) (eff. July 1, 2014) ("[a] party may

petition for leave to appeal *** from an order of the circuit court denying a motion to dismiss on the grounds that defendant has done nothing which would subject defendant to the jurisdiction of the Illinois courts").

¶ 30      On September 10, 2015, this court granted that petition, and this appeal follows.

¶ 31      ANALYSIS

¶ 32      On this permissive interlocutory appeal, defendant GSK argues that the trial court erred in denying its motion to dismiss the out-of-state plaintiffs' claims due to lack of personal jurisdiction. For the following reasons, we affirm.

¶ 33      I. Standard of Review

¶ 34      It is well-settled that it is the plaintiff who "bears the burden of establishing a *prima facie* basis upon which jurisdiction over an out-of-state resident may be exercised" (*Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 561 (2006)), and that burden is "minimal." *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 532 (1998). The "defendant may overcome [the] plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction." *Russell*, 2013 IL 113909, ¶ 28.

¶ 35      On appeal, we "resolve in favor of the plaintiff any conflicts in the pleadings and affidavits." *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010). "When the circuit court decides a jurisdictional question solely on the basis of documentary evidence," and without an evidentiary hearing, as it did in this case, our review is *de novo*. *Roiser*, 367 Ill. App. 3d at 561; *Russell*, 2013 IL 113909, ¶ 28. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 36      In reviewing the trial court's decision on appeal, " 'this court reviews the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of

whether the trial court relied on those grounds or whether the trial court's reasoning was correct.' " *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18 (quoting *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24).

¶ 37                                    II. Applicable Statutory and Constitutional Provisions

¶ 38        Section 2-209 of the Code of Civil Procedure (Code), "commonly referred to as the Illinois long-arm statute, governs the exercise of personal jurisdiction by an Illinois court over a nonresident defendant." *Russell*, 2013 IL 113909, ¶ 29; 735 ILCS 5/2-209(c) (West 2012).

¶ 39        Subsection (a) of section 2-209, which governs specific jurisdiction, lists 14 different actions by a defendant that will subject him or her to Illinois jurisdiction. 735 ILCS 5/2-209(a)(1)-(14) (West 2012). For example, a defendant is subject to jurisdiction for "any cause of action arising from the doing of any *** acts" that include the transaction of business and "the making or performance of any contract *** substantially connected with" Illinois. 735 ILCS 5/2-209(a)(1), (a)(7) (West 2012).

¶ 40        Subsection (c) is a "catchall provision" that permits Illinois courts to " 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.' " *Roiser*, 367 Ill. App. 3d at 561 (quoting 735 ILCS 5/2-209(c) (West 2002)). Subsection (c) permits an Illinois court to exercise personal jurisdiction to the extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (Illinois long-arm statute, subsection (c), is "coextensive with the due process requirements of the United States Constitution").

¶ 41        An exercise of jurisdiction under any of the statutory subsections must comport with the federal due process clause. U.S. Const., amend. XIV. The federal due process clause limits a

state's exercise of personal jurisdiction over a nonresident defendant to those instances where the defendant had at least "minimum contacts" with the state. *Roiser*, 367 Ill. App. 3d at 561. This court has described the minimum contacts standard as follows:

> "The minimum contacts standard ensures that 'requiring the out-of-state resident to defend in the forum does not " 'offend traditional notions of fair play and substantial justice.' " ' [Citation.] The minimum contacts analysis must be based on some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, in order to assure that a nonresident will not be haled into a forum solely as a result of random, fortuitous, or attenuated contacts with the forum or the unilateral acts of a consumer or some other third person." *Roiser*, 367 Ill. App. 3d at 561-62.

¶ 42    The minimum contacts needed for jurisdiction depends on whether the jurisdiction asserted is general or specific jurisdiction. *MacNeil*, 401 Ill. App. 3d at 1081. General jurisdiction exists when a defendant's general business contacts with the forum state are continuous and systematic. *Knaus v. Guidry*, 389 Ill. App. 3d 804, 814 (2009); *MacNeil*, 401 Ill. App. 3d at 1081; see also *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984).

¶ 43    "In the context of corporations, specific jurisdiction may be asserted when the suit directly arises out of or is connected to the defendant's purportedly wrongful acts within the forum state" (*Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill. App. 3d 243, 248 (2007) (citing *Illinois Commerce Comm'n v. Entergy-Koch Trading, LP*, 362 Ill. App. 3d 790, 796 (2005))) such that it is reasonable to require the defendant to litigate in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980)).

¶ 44     In the case at bar, plaintiffs do not argue that Illinois may exercise general jurisdiction over defendant GSK. Thus, we confine our analysis to specific jurisdiction, and that inquiry is two-fold: (1) the corporate, nonresident defendant must have minimum contacts with Illinois in that (a) it purposefully directed its activities at that state and (b) plaintiffs' claims arose from or related to those contacts with Illinois (see *Burger King Corp.*, 471 U.S. at 472 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984))); and (2) it must be reasonable for Illinois to exercise jurisdiction over the defendant. See *World-Wide Volkswagen Corp.*, 444 U.S. at 292 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

¶ 45                          III. Plaintiff's *Prima Facie* Showing

¶ 46     For the following reasons, we find that the out-of-state plaintiffs made a *prima facie* showing that Illinois has specific jurisdiction over defendant GSK.

¶ 47     First, plaintiffs made a *prima facie* showing that defendant GSK had sufficient minimum contacts with Illinois. "With specific jurisdiction, a nonresident defendant has minimum contacts with the forum state [(1)] when 'the defendant has "purposefully directed" [its] activities at *** the forum *** and [(2)] the litigation results from alleged injuries that "arise out of or relate to" those activities [citation].' " *Bell v. Don Prudhomme Racing, Inc.*, 405 Ill. App. 3d 223, 231 (2010) (quoting *Burger King Corp.*, 471 U.S. at 472).

¶ 48                              A. Purposeful Activities

¶ 49     In the case at bar, defendant GSK conceded that it had purposefully directed its activities at Illinois. At the hearing before the trial court on June 10, 2015, GSK argued that "no one disputes that GSK had purposeful contacts with Illinois." Even if defendant GSK had not conceded this point, we would have to conclude that defendant purposefully availed itself of the

state's benefits by contracting with 17 Illinois physicians in 10 Illinois cities—from Springfield to Chicago to Gurnee—to conduct between 18 and 21 clinical trials of Paxil in Illinois, on Illinois study subjects, every year from 1985 to 2003. See 735 ILCS 5/2-209(a)(7) (West 2012) (specific jurisdiction based on "the making or performance of any contract").[3] The quality of defendant GSK's relationship with Illinois can hardly be characterized as random, attenuated, or the like; the contracts with Illinois, over the course of two decades, were purposeful and directed. In addition, defendant GSK admitted (1) that between the years 2000 and 2006, it had anywhere between 79 and 121 employees marketing Paxil in Illinois; (2) that, as of October 16, 2014, it employed 217 people who resided in Illinois; and (3) that it maintained an agent for service of process in Illinois. Thus, defendant GSK purposefully availed itself of the privilege of conducting activities in Illinois.

¶ 50                                  B. Directly Arose From or Related to

¶ 51         The out-of-state plaintiffs also made a *prima facie* showing that their claims directly arose from or related to defendant GSK's purposeful activities in Illinois. For specific jurisdiction to exist, the litigation must result from alleged injuries that arose out of or related to defendant's in-state activities. *Bell*, 405 Ill. App. 3d at 231 (quoting *Burger King Corp.*, 471 U.S. at 472). Our supreme court has observed: "Although the United States Supreme Court has not

---

[3]"A nonresident defendant's contract with an Illinois resident alone does not automatically establish the required minimum contacts. [Citation.] Instead, in determining whether a defendant has purposefully availed himself of the benefits of Illinois law in forming the contract, the court considers the following factors: (1) who initiated the transaction; (2) where the contract was formed; and (3) where the contract was performed. [Citation.]" *Graver v. Pinecrest Volunteer Fire Department*, 2014 IL App (1st) 123006, ¶ 16.

With respect to the first and second factors, the amended declaration of Kalpesh Joshi, a GSK employee, states that "[w]hen a clinical trial is a multicenter study, GSK will contract with individual investigators *at* the various sites." (Emphasis added.) While the contracts do not appear in the record, this statement indicates that GSK both initiated the transaction and executed the contracts with Illinois physicians in Illinois. With respect to the third factor, the Illinois physicians performed the clinical trials in Illinois. Thus, these factors support the conclusion that defendant purposefully availed itself of the benefits of this state.

clarified what is meant by 'arising out of' or 'related to' in the context of a jurisdiction question [citation], several courts have determined that the applicable standard is lenient or flexible."[4] *Russell*, 2013 IL 113909, ¶ 83.

¶ 52    In the case at bar, plaintiffs claim that their injuries arose out of deficiencies in defendant GSK's Paxil clinical trials. Specifically, plaintiffs claim (1) that Paxil clinical trials resulted in at least 18 pregnancies, and defendant GSK largely failed to track their outcomes; (2) that, of the few pregnancies that defendant GSK did track, there were fetal abnormalities, including a heart defect; (3) that defendant GSK failed to consider any of the pregnancy outcome data in assessing the safety of Paxil to unborn children; (4) that defendant GSK's Illinois data on Paxil "was aggregated with data from [the] other sites to reach statistical significance"; and (5) that "the record compels the inference that the Illinois principal investigators had input into, and exercised control over, the overall design study protocol and analysis of the aggregate data." Plaintiffs argue that their claims arose out of these collective failures during the Paxil trials. Plaintiffs claim that their children were born with serious congenital defects as a result of Paxil's warning labels, which inadequately warned the mothers of the association between the drug and birth defects. These labels were informed, in part, by the results of the Illinois clinical trials. Thus, plaintiffs' claims directly arose from defendant GSK's acts and omissions in Illinois.

¶ 53    In support of their first three propositions, plaintiffs identify a particular failure of defendant GSK, namely, that its Paxil clinical trials resulted in at least 18 pregnancies that it

---

[4]Our supreme court cited: "*Myers v. Casino Queen, Inc.*, 689 F.3d 904, 913 (8th Cir. 2012) (explaining the need for a flexible standard, including the consideration of a totality of the circumstances, when analyzing the 'relate to' factor of the Court's standard); *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012) (noting the 'arising from' requirement is subject to a 'lenient standard'); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) (determining that '[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts'); *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 25 (1st Cir. 2005) (recognizing that the 'arise out of' or 'relate to' requirement is a 'flexible, relaxed standard')." *Russell*, 2013 IL 113909, ¶ 83.

failed to adequately track. In response, defendant GSK argues that it did not consider the data to determine the correlation between Paxil and birth defects because it was required by the FDA to exclude pregnant women from its trials. However, as plaintiffs argue, the FDA also states:

"Some groups in the general population may require special study because they have unique risk *** considerations that need to be taken into account during drug development ***. ***

* * *

In general, pregnant women should be excluded from clinical trials where the drug is not intended for use in pregnancy. If a patient becomes pregnant during administration of the drug, treatment should generally be discontinued if this can be done safely. Followup evaluation of the pregnancy, fetus, and child is *very important*." (Emphasis added.) International Conference on Harmonisation; Guidance on General Considerations for Clinical Trials, 62 Fed. Reg. 66113-02, 66117 (Dec. 17, 1997).

Plaintiffs contend that defendant GSK "pointed to no ethical prohibition on retrospectively reviewing the outcomes of unintended in utero exposure to a drug during a clinical trial." Accordingly, if defendant GSK failed to adequately track the pregnancies of women who participated in its clinical trials, a portion of which occurred in Illinois, plaintiffs' claims would thus arise from or relate to defendant GSK's purposeful activities in Illinois.

¶ 54    In support of their fourth proposition regarding data analysis, plaintiffs argue that their claims arose from or related to defendant GSK's Illinois Paxil trials because the Illinois data was aggregated with the data from the other study locations in the multicenter Paxil study. It was from that single set of data that defendant GSK drew its statistically significant conclusions with respect to Paxil's safety. To echo the trial court: "What if [Illinois] had 1/10 of 1 percent [of the total trials], but it was that data that skewed the entire interpretation of the tests? How do I

know?" The Illinois data was aggregated with the other data to inform the warning label content for Paxil, upon which the out-of-state plaintiff mothers relied in making their decision to take the drug.[5]

¶ 55    Finally, in support of their fifth proposition regarding the Illinois physicians' degree of input, plaintiffs cite defendant GSK's own language in a sworn declaration: Illinois principal investigators had "little or no input into or control over the study design protocol or analysis of the aggregate data collected from all study sites." As plaintiffs argue, the word "little" invites the inference that the physicians had *some* degree of input into, and control over, the clinical trials, or else the word would have been omitted. Absent further guidance in the record, we "resolve in favor of the plaintiff any conflicts in the pleadings and affidavits." *MacNeil*, 401 Ill. App. 3d at 1080.

¶ 56    In light of the "lenient and flexible" "arising from" and "related to" standard, plaintiffs meet the low threshold of a *prima facie* showing that their claims arose from defendant GSK's Paxil trials in Illinois. As discussed above, "[o]n a motion to dismiss, plaintiff[s] need not prove [their] case, but rather must only establish a *prima facie* case, where all well-pleaded facts are taken as true." *Senese v. Climatemp, Inc.*, 222 Ill. App. 3d 302, 316 (1991) (citing *Mid-Town Petroleum, Inc. v. Dine*, 72 Ill. App. 3d 296, 299 (1979)). Plaintiffs have satisfied this burden, and now the burden switches to defendant. *Russell*, 2013 IL 113909, ¶ 28. Defendant may "overcome [the] plaintiff's *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction." *Russell*, 2013 IL 113909, ¶ 28.

---

[5]This fact was alleged in plaintiffs' complaint. Specifically, plaintiffs allege that, had defendant GSK provided timely and "adequate warnings regarding the risks" of Paxil, they would not have ingested the drug. Plaintiffs further allege that, despite defendant GSK's opportunity and duty to strengthen the drug's warnings, it "touted [Paxil] as being safe for pregnant women" and "aggressively *** promoted" the drug with labels that inadequately cautioned patients of the associated risk factors.

¶ 57          IV. Defendant GSK Failed to Overcome Plaintiffs' *Prima Facie* Case

¶ 58                              A. Minimum Contacts

¶ 59          Defendant GSK failed to overcome plaintiffs' *prima facie* showing that defendant GSK had minimum contacts in Illinois.

¶ 60                              1. Purposeful Activities

¶ 61          First, defendant GSK conceded that it "had purposeful contacts with Illinois." However, it also argues that specific jurisdiction is lacking because it is a nonresident defendant being sued by nonresident plaintiffs who were injured outside of Illinois, and "Illinois courts have rejected specific jurisdiction where an out-of-state plaintiff tries to sue an out-of-state defendant." In support, defendant GSK cites *Sabados v. Planned Parenthood of Greater Indiana*, 378 Ill. App. 3d 243 (2007).

¶ 62          In *Sabados*, a female Illinois patient visited a clinic in Indiana that examined her and prescribed her birth control pills. *Sabados*, 378 Ill. App. 3d at 245. After she developed a blood clot back in Illinois, she brought a medical negligence suit in Illinois against the Indiana clinic. *Sabados*, 378 Ill. App. 3d at 245. The appellate court found that the Indiana clinic lacked sufficient minimum contacts with Illinois to support specific jurisdiction. *Sabados*, 378 Ill. App. 3d at 250. Defendant GSK's reliance on this case is misplaced because the Indiana clinic did not conduct business in Illinois. In sharp contrast, in the case at bar, defendant GSK contracted with 17 principal investigators in Illinois to conduct clinical trials in Illinois.

¶ 63          Moreover, contrary to defendant GSK's assertion that Illinois courts may not entertain plaintiffs' claims, the United States Supreme Court has found that a state can exercise jurisdiction over a nonresident accused by a nonresident of causing injuries, most of which took place outside of the forum state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984). In

*Keeton*, a New York resident brought a libel suit in New Hampshire against a magazine publisher incorporated in Ohio with its principal place of business in California. *Keeton*, 465 U.S. at 772. The Court found the publisher's "regular circulation of magazines in [New Hampshire] *** sufficient to support an assertion of jurisdiction." *Keeton*, 465 U.S. at 773-74. The plaintiff could recover in New Hampshire for damages "throughout the United States" (*Keeton*, 465 U.S. at 774), even though it was "undoubtedly true that the bulk of [her] harm *** occurred outside New Hampshire." *Keeton*, 465 U.S. at 780. The Court found the fact that defendant conducted "a '*part* of its general business' in New Hampshire *** sufficient to support jurisdiction when the cause of action [arose] out of the very activity being conducted, *in part*, in New Hampshire." (Emphases added.) *Keeton*, 465 U.S. at 780. Finally, the Court concluded that it does not require that plaintiffs "have 'minimum contacts' with the forum State before permitting that State to assert personal jurisdiction over a nonresident defendant." *Keeton*, 465 U.S. at 779. A "plaintiff's residence in the forum State is not a separate [jurisdictional] requirement, and lack of residence will not defeat jurisdiction established on the basis of the defendant's contacts." *Keeton*, 465 U.S. at 780.

¶ 64          Similarly, in the case at bar, defendant GSK conducted a *part* of its general business in Illinois, and plaintiffs' claims arose out of the very trials conducted, *in part*, in Illinois. The fact that the contested plaintiffs are not Illinois residents does not destroy the jurisdiction established on the basis of defendant GSK's activities here. As such, similar reasoning supporting specific jurisdiction applies, and defendant GSK's claim that nonresidents may not sue a nonresident in Illinois is unavailing.

¶ 65                                    2. Directly Arose From or Related to

¶ 66          Defendant GSK also failed in its burden to rebut plaintiffs' *prima facie* showing that their claims arose from or related to defendant GSK's Illinois contacts. While defendant GSK conceded purposeful contacts, it denied that plaintiffs' claims arose from them. Therefore, we dedicate a bulk of our analysis to this prong of the test.

¶ 67          First, defendant GSK argues that there is no "meaningful link" between plaintiffs' claims and the small fraction of Paxil trials that occurred in Illinois—17 of 361, or 5%, of all Paxil trials—and that such a "meaningful link" is what distinguishes general jurisdiction from specific jurisdiction.[6] Put differently, defendant GSK argues that the scattered nature of the clinical trials across 44 states and foreign countries absolves it from personal jurisdiction in Illinois. In response, the trial court asked: "[Am I] trying to figure out where the best location for this litigation is, or whether or not there's a significant nexus to Illinois?" It is plaintiffs' burden to name a proper place for personal jurisdiction, not the best place—that issue is more apt for *forum non conveniens*. Plaintiffs satisfied that burden above. *Supra* ¶¶ 46-58.

¶ 68          Similarly, defendant GSK argues that its Illinois activities must meet both "legal cause" and "cause in fact" tests to give rise to personal jurisdiction. *Keller v. Henderson*, 359 Ill. App. 3d 605, 617 (2005). That is, defendant's forum activities "gave birth to" plaintiffs' injuries, and "but for" those activities, plaintiffs would not have been injured. *Keller*, 359 Ill. App. 3d at 617.

---

[6]In support of its proposition that plaintiffs' claims did not arise from its forum activities, defendant GSK cites In re Plavix Related Cases, No. 2012-L-5688 (Cir. Ct. Cook Co.). First, this is a trial court case with no binding authority on this court. Second, this is an unreported case. We will not cite an unreported case. *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 101 ("[W]e will not cite an unreported case."); *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2012 IL App (1st) 111533, ¶ 15 ("an unreported case" is "not binding on any court"); *People v. Moore*, 243 Ill. App. 3d 583, 584 (1993) ("the decision was unreported and of no precedential value"). "Unreported decisions have no precedential value ***." *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 38; *Burnette v. Stroger*, 389 Ill. App. 3d 321, 329 (2009); *West American Insurance Co. v. J.R. Construction Co.*, 334 Ill. App. 3d 75, 82 (2002) (a "foreign, unreported decision *** is of no precedential value").

However, as the trial court correctly emphasized: "What if [Illinois] had 1/10 of 1 percent [of the total trials], but it was that data that skewed the entire interpretation of the tests? How do I know?" Beyond defense counsel's speculative response, "I don't think that could ever be true," defendant GSK did not offer "uncontradicted evidence" that defeats jurisdiction. See *Russell*, 2013 IL 113909, ¶ 28.

¶ 69       Next, defendant GSK argues that "[t]here was nothing unique about the Illinois *** trials" but cites no case that names "uniqueness" as a requirement for establishing jurisdiction.[7] Furthermore, defendant GSK argues that "95 percent of GSK's clinical program for Paxil had no connection at all to Illinois." This is no response to plaintiffs' argument that "in the context of specific personal jurisdiction, whether the Illinois contacts are meaningful depends entirely on their relation to the Plaintiffs' causes of action, and not at all on a percentage-based comparison between how much related conduct occurred outside of Illinois."

¶ 70       Defendant GSK further argues (1) that "[p]laintiffs do not even allege that any of these 18 pregnancies occurred in Illinois" and (2) that "[p]laintiffs do not allege that GSK made *** important decisions about clinical trials *** in Illinois." Yet, defendant GSK, which uniquely has access to this type of information—where the pregnancies and decisionmaking, in fact, occurred—decided not to present it with its motion to dismiss. As the burden lies squarely with the defendant to provide "uncontradicted evidence that defeats jurisdiction" (*Russell*, 2013 IL 113909, ¶ 28), defendant GSK's responses are inadequate to negate plaintiffs' *prima facie* showing of specific jurisdiction.

---

[7]The trial court also alluded to this point at argument. Defense counsel said, "I have a hard time believing that the plaintiffs are really going to say that their case is just about the Illinois clinical trials." The court responded, "does it have to be *just* about [the Illinois trials]?" (Emphasis added.)

¶ 71     Moreover, defendant GSK argues that the Illinois Paxil trials could not have given rise to plaintiffs' claims because the trials were not designed, nor could they have been designed, to test Paxil's impact on fetus development. Defendant GSK argues that Paxil was not tested for its efficacy in treating psychiatric disorders in pregnant women because it is unethical in the medical community to include pregnant women as study participants; thus, GSK excluded pregnant women or women who were not using adequate means of contraception. However, as plaintiffs note, defendant GSK "pointed to no ethical prohibition on retrospectively reviewing the outcomes of unintended in utero exposure to a drug during a clinical trial."

¶ 72     In sum, plaintiffs' injuries allegedly arose from acts of omission during the clinical trials and the resulting inadequate warning labels. These omissions, as alleged in plaintiffs' complaint, include defendant GSK's (1) failure to conduct appropriate research on the correlation between Paxil and birth defects when such information was "reasonably and scientifically knowable"; (2) failure to sufficiently investigate Paxil in preclinical, clinical, and postclinical stages with respect to safety for its intended and foreseeable uses; (3) negligence in manipulating data to conceal the birth defect risk; and (4) false affirmance that Paxil was adequately tested. Defendant GSK has failed to overcome plaintiffs' *prima facie* showing that their claims arose from or related to defendant GSK's Illinois activities.

¶ 73                              B. Reasonableness

¶ 74     Finally, to comply with federal due process, we must also consider the reasonableness of requiring the defendant to litigate in Illinois. See *Russell*, 2013 IL 113909, ¶ 87. To determine reasonableness, courts consider (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interest of several States, including the forum State, in the efficient judicial resolution of

the dispute and the advancement of substantive social policies. *Russell*, 2013 IL 113909, ¶ 87; *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

¶ 75    Here, Illinois has an indisputable interest in resolving litigation stemming, in part, from clinical trials held in Illinois, run by Illinois doctors on Illinois subjects. In addition, whether or not the out-of-state plaintiffs' claims are dismissed, this litigation will go forward in Illinois. Defendant GSK has not moved to dismiss the claims of the Illinois plaintiffs nor have the other defendants. Thus, litigation, concerning almost the same issues, will go forward in this state, with or without these particular plaintiffs. Defendants have not advanced any reason how piecemeal litigation in different forums advances the goals of "efficient judicial resolution of the dispute" and "substantive social policies." *Russell*, 2013 IL 113909, ¶ 87. Piecemeal litigation raises the cost, considerably, to the collective plaintiffs, while also running the risk of inconsistent verdicts.

¶ 76    Defendants argued before the trial court that the out-of-state plaintiffs could sue in Delaware, North Carolina, or Pennsylvania—three states where none of the plaintiffs reside—or individually in each of the states where each one resides. This would result in at least two suits: (1) the suit that is going forward in Illinois with Illinois plaintiffs and (2) a suit with out-of-state plaintiffs. If plaintiffs sued in each of the states where they reside, that would result in suits in six different states. As noted above, this would be unnecessarily costly to the litigants, as well as a waste of judicial resources, and would run the risk of conflicting rulings.

¶ 77    Defendant GSK also argues that litigating the out-of-state plaintiffs' claims in Illinois is unreasonable because the evidence concerning their prescription and treatment is located out-of-state. However, the prescription and treatment evidence is scattered across six different states. Thus, this consideration does not weigh heavily for or against any of the six states in which

23

plaintiffs reside. *Cf. Meyers v. Bridgeport Machines Division of Textron, Inc.*, 113 Ill. 2d 112, 121 (1986) (dismissal of a *forum non conveniens* motion is proper where potential witnesses and evidence are equally scattered). In addition, defendant's suggestion that the suit could go forward in Delaware, North Carolina, or Pennsylvania, which are the states of its incorporation and headquarters, does nothing to solve this problem.

¶ 78       Thus, considering the burden on the defendant, the forum state's interest, the plaintiffs' interest in obtaining relief, and the interest of other states, we cannot find litigating in Illinois unreasonable.

¶ 79                                CONCLUSION

¶ 80       As defendant GSK failed to overcome plaintiffs' *prima facie* showing of specific jurisdiction, the trial court did not err in denying defendant GSK's motion to dismiss the out-of-state plaintiffs' claims due to lack of personal jurisdiction.

¶ 81       Affirmed.