# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 19, 2016 Session

## IN RE PROCEEDING TO ENFORCE JUDGMENT AGAINST NATIONAL PARTITIONS, INC.

### Appeal from the Chancery Court for Knox County
### No. 187666-3        Michael W. Moyers, Chancellor

_____

### No. E2016-00339-COA-R3-CV-FILED-MARCH 27, 2017

_____


American Plastics Technologies, Inc. (APT) and RAO Design, International, Inc. (RDI) (collectively the Plaintiffs) brought this action in the trial court seeking to enroll an Illinois judgment against National Partitions (NP). The judgment had been awarded by the Circuit Court of Cook County, Illinois. NP filed an answer questioning the jurisdiction of the Illinois court. NP coupled its answer with a counterclaim asserting that the Plaintiffs had been guilty of the initial breach of the contract. Following a hearing, the trial court decreed registration of the Illinois judgment and ultimately dismissed NP's counterclaim. NP appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded


CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Frederick L. Conrad, Jr., Knoxville, Tennessee, for the appellant, National Partitions, Inc.

Bradley Block, Northbrook, Illinois, and Garrett P. Swartwood, Knoxville, Tennessee, for the appellees, American Plastics Technologies, Inc. and RAO Design International, Inc.


## OPINION

# I.

APT and RDI are both corporations organized under the laws of the State of Illinois, and each has its principal place of business in Illinois. According to APT, it is involved

> in the business of, among other things, manufacturing equipment used to create IV bags and bottles containing sterile, pure saline and medicinal solutions. On occasion, [it] also helps customers design and/or construct either all or a portion of their factories, and supplies components for those factories.

APT and RDI are affiliates. NP is a corporation organized under the laws of the State of Tennessee and has its principal place of business in Tennessee. The Plaintiffs assert that "[NP] supplies components used to build clean rooms – interior rooms which have minimal airborne contaminants and which are frequently used in the manufacture of sterile, pure saline and medicinal solutions."

In June 2011, the parties entered into a contract for NP to supply the Plaintiffs with components for and assembly of a clean room and assemble the clean room in Nigeria, Africa. The terms of the contract provide the following payment terms: "Deposits per policy. Balance due at shipment." As agreed by the parties, APT paid a $60,000 deposit to NP.

In August 2013, after APT's project was delayed and because NP was having production problems, the parties modified the contract. The modification affected the price and delivery date of the components and the price of the installation. At some point after the modification of the contract and prior to the shipment of the components, NP demanded that APT pay the balance due immediately. APT, however, refused to pay, relying upon the terms of the contract, which recite that payment of the balance is not required until NP ships the components. Because NP refused to ship the components before the Plaintiffs paid the balance, the Plaintiffs sought the return of their $60,000 deposit due to NP's refusal to and failure to perform.

On September 23, 2013, because NP failed to perform under the contract or return the deposit, the Plaintiffs filed a complaint against NP for breach of contract and unjust enrichment in the Circuit Court of Cook County, Illinois. NP did not file an answer or make an appearance in that case. Accordingly, the Plaintiffs filed a motion for default judgment. On November 21, 2013, after NP failed to appear at the default hearing, the circuit court entered a judgment in favor of the Plaintiffs, awarding them $60,000 in damages and $590.14 in costs.

On July 11, 2014, the Plaintiffs sought to enroll their Illinois judgment in Tennessee. NP timely filed an answer objecting to enrollment of the judgment. NP attacked the judgment on the grounds that neither jurisdiction nor venue was proper in the Circuit Court of Cook County, Illinois. NP also asserted a counterclaim against the Plaintiffs, alleging that the Plaintiffs were the ones who, in fact, breached the contract and that it, NP, had suffered damages in the amount of $77,361.31. Its claim of damages included the unpaid balance, storage fees, administrative costs, crating and uncrating fees, and lost profits.

When the Plaintiffs did not file an answer to the counterclaim, NP filed a motion for default judgment. NP also filed a motion for summary judgment asking the court to deny entry of the Illinois judgment. It stated the following in its motion for summary judgment:

> [NP] did not appear in the . . . case . . . and, therefore, has not submitted to the jurisdiction of the Circuit Court for Cook County, Illinois.
>
> Neither jurisdiction nor venue was appropriate in the [Illinois court].
>
> [NP] does not have an office in Illinois . . . and its main office is located [in] Tennessee.
>
> [NP] was contacted in Tennessee by [APT] to initiate the contract underlying this litigation. . . .
>
> The materials underlying the litigation shipped from Knox County, Tennessee. . . .
>
> The materials were to be paid by [APT] to initiate shipment with said payment to be made at the offices of [NP] in Knox County, Tennessee.
>
> The materials underlying this litigation were to be shipped to Nigeria.

(Paragraph numbering in original omitted.)

Plaintiffs then filed a motion to dismiss NP's counterclaim on the basis of res judicata. In their motion to dismiss, they asserted the following:

> The allegations of the [c]ounterclaim concern the same

- 3 -

contract and the same set of operative facts as the allegations in the [c]omplaint in the Illinois [a]ction. . . . [I]n a proceeding to register and enforce a foreign judgment, "issues of fact underlying a foreign judgment may not form the basis for attacking the validity of a foreign judgment." . . . " . . . Foreign judgments are treated in the same manner as the judgment of a court of record of this state." Even a judgment this [c]ourt believes is incorrect is still entitled to full faith and credit.

[NP] may only challenge the Judgment on the same basis that it could vacate the Judgment under Tennessee Rule of Civil Procedure 60. The only such ground that [NP] has asserted is its . . . claim that the Illinois Court did not have personal jurisdiction over it. [NP] cannot contest the merits of the parties' claims in a motion made pursuant to Rule 60, and cannot do so here.

The second reason for dismissing the [c]ounterclaim is because the Uniform Enforcement of Foreign Judgments Act describes the procedure for registration of a foreign judgment; it does not provide for counterclaims whereby parties can litigate issues other than the validity of the foreign judgment. . . . [T]here is no procedure for the filing of a counterclaim at this time in this proceeding.

(Internal citations and paragraph numbering in original omitted.)

In addition to its initial attack on the personal jurisdiction and venue of the Illinois court, NP later attacked the court's subject matter jurisdiction. It asserted that this action is transitory in nature and that only Knox County, Tennessee has jurisdiction over the cause of action. The Plaintiffs argued that, because the transaction originated in and took place in Tennessee, the cause of action in no way took place in Illinois to give it jurisdiction over the matter. Additionally, NP argued that APT's notice of its motion for default judgment was insufficient under Tennessee law, arguing that the notice was not served five days before the hearing on November 21, 2013 as required by Tennessee's Rules of Civil Procedure.

[NP] filed a motion for summary judgment seeking to deny entry of the Illinois judgment. The court denied the motion. Subsequently, the Plaintiffs filed a motion for summary judgment asking the court to enroll their foreign judgment and dismiss NP's counterclaim.

On October 12, 2015, the trial court awarded the Plaintiffs partial summary judgment enrolling the Plaintiff's judgment. In granting partial summary judgment to the Plaintiffs, the trial court held as follows:

> [T]he record demonstrates that [NP] had systematic and continuous business in the State of Illinois sufficient to invoke the general personal jurisdiction of Illinois;
>
> [NP] was served with the Plaintiffs' complaint in the Illinois case;
>
> [NP] knew it had been sued by the Plaintiffs and chose not to defend in that Illinois case;
>
> [NP] cannot establish a basis to set aside the judgment in these proceedings;
>
> the jurisdiction of the Illinois Court was sufficient to render the Foreign Judgment valid, and the Full Faith and Credit clause of the U.S. Constitution requires the judgment be enrolled and acknowledged in Tennessee; and
>
> the Plaintiffs are entitled to summary judgment relative to the domestication of the Foreign Judgment in Tennessee as a matter of law.

(Paragraph numbering in original omitted.) The court reserved a ruling on the dismissal of the counterclaim, allowing NP fifteen days to defend against dismissal of the counterclaim on the basis of res judicata. Following a hearing on NP's motion to be allowed to proceed on its counterclaim, the court found that the foreign judgment is a final judgment on the merits issued by a court of competent jurisdiction. It also found that there is an identity of parties between the Illinois action and the action at hand and an identity of cause of action between the cases. Accordingly, the court held that NP's counterclaim is barred by res judicata. NP appeals the trial court's enrollment of the foreign judgment and the dismissal of its counterclaim.

## II.

In the format utilized by NP, the issues, as taken verbatim from its brief, are as follows:

> Whether the Knox County Chancery Court erred in domesticating a foreign judgment entered in the Circuit Court

- 5 -

of Cook County, Illinois on behalf of Plaintiffs/Appellees ruling that the Illinois Court had proper jurisdiction and venue of the subject matter and Defendant/Appellant, whether the Chancery Court erred in accepting entry of a judgment in which the notice of hearing on the motion for default would not have complied with the Tennessee Rules of Civil Procedure, and whether the Chancery Court erred in denying the request of Defendant/Appellant to be allowed to proceed on their counterclaim and to compel the Plaintiffs/Appellees to answer discovery on the same ruling that res judicata applied to bar the counterclaim of the Defendant/Appellant despite the fact that the State of Illinois does not have compulsory counterclaims and the claims of the Defendant had clearly not been raised in Illinois as the Defendant/Appellant did not appear or file pleadings in Illinois.

**III.**

Regarding our standard of review of a grant of summary judgment, the Supreme Court has stated as follows:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

> \* \* \*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

- 6 -

***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (emphasis in original).

In making the determination of whether summary judgment was correctly granted,

> [w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008); ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox Cnty. Bd. of Educ.***, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See* ***White v. Lawrence***, 975 S.W.2d 525, 529 (Tenn. 1998); ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995).

***Wells Fargo Bank, N.A. v. Lockett***, No. E2013-02186-COA-R3-CV, 2014 WL 1673745 at *2 (Tenn. Ct. App. E.S., filed Apr. 24, 2014).

## IV.

Foreign judgments are entitled to full faith and credit pursuant to the United States Constitution. The Constitution provides that "Full Faith and Credit shall be given in each state to the . . . judicial Proceedings of every other State." U.S. Const. art. IV, § 1. Tenn. Code Ann. § 26-6-104 codifies the Full Faith and Credit clause, providing as follows:

> (a) A copy of any foreign judgment authenticated in accordance with the acts of congress or the statutes of this state may be filed in the office of the clerk of any circuit or chancery court of this state.
>
> (b) The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state.
>
> (c) A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner.

This Court has previously stated the grounds on which a Tennessee court may refuse to enroll a foreign judgment and the burden that a party bears in challenging the

enrollment.  In *Guseinov v. Synergy Ventures, Inc.*, 467 S.W.3d 920, 925 (Tenn. Ct. App. 2014), we stated the following:

> Despite the strong policy behind [Article IV, § 1 of the United States Constitution], three recognized exceptions to the enrollment of a foreign judgment exist.  Specifically, a forum state may decline to accord full faith and credit to a foreign judgment of another state if it is (1) void due to lack of personal or subject matter jurisdiction, (2) based upon fraud, or (3) where enforcement of the judgment would violate the public policy of the forum state.  Tennessee courts have recognized and embraced all three of these exceptions.
>
> A party seeking to prevent the enrollment of a foreign judgment in Tennessee carries a 'stern and heavy' burden.  Moreover, '[t]he factual issues underlying the foreign judgment may not be the basis of an inquiry to deny the foreign judgment full faith and credit.

(Internal citations omitted; brackets in original.)  With this standard in mind, we address NP's arguments against enrollment of the Illinois judgment.

## V.

### A.

The trial court enrolled the Plaintiffs' Illinois judgment against NP, finding that NP had sufficient contacts with Illinois for it to invoke general personal jurisdiction over NP, that NP had notice of the case and chose not to defend it, and that NP cannot establish a basis to set aside the judgment.  Accordingly, the trial court (1) held that summary judgment on the issue of enrollment of the foreign judgment was appropriate and (2) enrolled the Illinois judgment.

In its brief, NP argues that the Illinois judgment is invalid.  NP argues that venue in Illinois was improper.  It cites Tenn. Code Ann. § 20-4-101 to support its assertion that venue was only proper in Knox County, Tennessee.  That statute provides that "[i]n all civil actions of a transitory nature, unless venue is otherwise expressly provided for, the action may be brought in the county where the cause of action arose or in the county where the individual defendant resides."  NP's argument, however, is flawed.  The Plaintiffs filed their action in Illinois, so Illinois's venue statute, not Tennessee's, is applicable to the issue of venue.

NP also challenges venue under an Illinois statute, which provides that an action

must be commenced "in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILL. COMP. STAT. 5/2-101. Illinois law, however, provides that "[n]o order or judgment is void because rendered in the wrong venue, except in the case of judgment by confession . . . ." 735 ILL. COMP. STAT. 5/2-104(a). Accordingly, under Illinois law, even if venue were deemed to be improper — something to which we cannot agree — the judgment would not be considered void merely because of improper venue.

Finally, even if venue was improper, improper venue is not one of the grounds that would allow a Tennessee court to refuse to enroll the judgment. *See Guseinov,* 467 S.W.3d at 925. We hold that the Illinois judgment is not invalid because of improper venue.

### B.

NP also challenges the Illinois judgment on the ground that the Illinois court lacked jurisdiction over the cause of action. It appears to us that NP is attacking the court's subject matter jurisdiction over the case by alleging that the Illinois court lacked venue. In its brief, NP's statement of the issues questions whether the Illinois court "had proper jurisdiction and venue over the subject matter." Other than that statement, NP makes no specific argument regarding the Illinois court's lack of subject matter jurisdiction. Rather, NP focuses more on the court's lack of venue, which we addressed above. Regardless, it is clear that the Circuit Court of Cook County in Illinois had subject matter jurisdiction over the claim at issue. The Illinois Constitution provides that "Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office." Ill. Const. art. VI, § 9. " '[I]n order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must [merely] present a justiciable matter.' " *Nationstar Mortg., LLC v. Canale*, 10 N.E.3d 229, 233 (Ill. App. Ct. 2014) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 182 (Ill. 2002)) (brackets in original). Because this is a breach of contract action, this is a justiciable matter. It clearly does not fall within the exceptions to the circuit court's general subject matter jurisdiction. We hold that the Illinois judgment is not invalid on the basis that the Illinois court lacked subject matter jurisdiction over the claim.

### C.

#### i.

In addition to the Illinois court's subject matter jurisdiction, NP attacks Illinois's personal jurisdiction over it. It asserts that "[t]he contract between the parties specifies

jurisdiction . . . to be in the Tennessee courts."[1]  The Illinois Appellate Court has held, however, that "[a] valid forum selection clause does not ' "oust" ' a court of its inherent jurisdiction to review a given case but rather presents a 'legitimate reason to refrain from exercising that jurisdiction.' "  *Putnam Energy, LLC v. Superior Well Servs., Inc.*, 2013 IL App (5th) 120422-U, 2013 WL 3487386 at *4 (Ill. App. Ct., filed July 9, 2013).  Thus, the forum selection clause alone does not void the Illinois court's judgment based on lack of personal jurisdiction.

Illinois's long-arm statute provides three bases relevant to this case on which an Illinois court could rely in asserting jurisdiction over NP.  A party submits to jurisdiction in Illinois when (1) the cause of action arises from that party's transaction of business within the state, (2) when the parties make or perform a contract substantially connected with the state, or (3) because the party was doing business within the state.  735 ILL. COMP. STAT. 5/2-209(a)(1), (a)(7), (b)(4).

**ii.**

When the cause of action is based on the transaction of business within Illinois, a party may bring a cause of action against the defendant on the basis of the specific transaction at issue.  735 ILL. COMP. STAT. 5/2-209(a)(1).  To determine whether this transactional test has been met, "a plaintiff must show that (1) the defendant transacted business in Illinois; (2) the cause of action arose from this transaction of business; and (3) personal jurisdiction was consistent with due process."  *Liaquat Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 910 (Ill. App. Ct. 2001).  "The purpose of the statutory phrase 'arising from' is to ensure that there is a close relationship between the cause of action against a nonresident defendant and [its] jurisdictional activities."  *Gaidar v. Tippecanoe Distribution Service, Inc.*, 702 N.E.2d 316, 323 (Ill. App. Ct. 1998).  "It is settled that a nonresident defendant can 'transact business' in Illinois without being physically present . . . ."  *Volkswagen Ins. Co. v. Whittington*, 374 N.E.2d 954, 957 (Ill. App. Ct. 1978).

In this case, it is clear that NP transacted business in Illinois and that transaction led to the Plaintiffs' cause of action.  NP transacted business in Illinois by engaging in negotiations with and finalizing the terms of its agreement with the Plaintiffs located in Illinois.  The relationship between the parties regarding the transaction at issue took place

---

[1]  A separate Terms of Sale Agreement that was not part of the contract provides as follows:

> The validity, interpretation and enforcement of this Agreement and all other instruments and documents executed in connection with this transaction shall be governed by Tennessee law. Notwithstanding anything contained herein to the contrary, each party shall have the right to institute judicial proceedings if necessary.  Venue for any court proceedings pursuant hereto shall be in Knox County, Tennessee.

over the span of years. The parties first started negotiating the terms of the contract and agreed to the initial terms of the contract in June 2011. In August 2013, the parties agreed to modify the terms of the contract. In September 2013, the Plaintiffs filed their complaint. For a period of over two years, the parties maintained a business relationship. NP entered into a contract with the Illinois plaintiffs that would result in a potential payment to it in excess of $100,000. NP clearly established a business relationship with the Illinois Plaintiffs and transacted business in the state.

NP's transaction of business with the Plaintiffs in Illinois involves the specific contract that led to the case before us. The parties entered into a contract under which the Plaintiffs paid NP a deposit of $60,000. The cause of action in this case arose from NP's transaction of business in the state of Illinois.

Finally, Illinois's personal jurisdiction over NP is consistent with due process. NP had sufficient contacts with Illinois that it could foresee being haled into court in Illinois. It entered into a contract involving a substantial amount of money and accepted a deposit in the amount of $60,000 from the Illinois Plaintiffs. NP maintained a business relationship in the state for over two years based upon the transaction at issue. It was foreseeable that NP could be required to defend a lawsuit in Illinois involving the transaction before us. We find that, because NP transacted business in Illinois, Illinois properly asserted jurisdiction over NP.

### iii.

Illinois may also assert personal jurisdiction over an out-of-state defendant on the basis that the party made or performed a contract substantially connected with Illinois. 735 ILL. COMP. STAT. 5/2-209(a)(7). In determining whether a defendant sufficiently availed itself of the benefits of Illinois law in forming a contract with an Illinois resident, the court should consider the following: (1) who initiated the contract; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Estate of Isringhausen ex rel. Isringhausen v. Prime Contractors & Assocs., Inc.*, 883 N.E.2d 594, 600-01 (Ill. App. Ct. 2008). "The location of the actual parties in a transaction or to a contract and the formation of the relevant contract are rarely dispositive of whether a defendant indeed transacted business in Illinois, seeing as much of modern business is transacted by mail and electronic communications across state lines." *Illinois Commerce Comm'n v. Entergy-Koch Trading, LP*, 841 N.E.2d 27, 34 (Ill. App. Ct. 2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

As discussed above, there was a contractual relationship between the Plaintiffs and NP that endured for over two years. In the transaction at issue, it is not clear which party initiated the contract. Both sides assert that the other party made the phone call initiating the contract. The initial contract was negotiated and formed by the parties via email.

Thus, where the parties negotiated the contract and where it was formed do not weigh in favor of either party. Rao Murukurthy, on behalf of the Plaintiffs, met in person with representatives from NP in regard to the modification agreement. The new agreement, however, was memorialized via email. In regard to the place of performance, NP was to manufacture the components and ship them to Africa, and the Plaintiffs would submit payment under the contract from Illinois to NP in Tennessee. Thus, performance of the contract would be from the parties' respective businesses. It was not as if the contract was to be performed exclusively in one location. Accordingly, none of these facts indicate that contract was not substantially connected to Illinois. As noted by the Illinois Appellate Court, "much of modern business is transacted by mail or electronic communications across state lines." *Id.* That is the case before us. The Plaintiffs were harmed in Illinois by NP's breach of contract. Furthermore, they rendered their part of the performance and negotiated the contract, all in the state of Illinois.

It cannot be persuasively argued that the breach of a contract with the Illinois Plaintiffs, resulting in damages to them in the amount of $60,000, was not a contract substantially connected with Illinois. NP should bear the burden of defending itself in a lawsuit based upon its breach to the Illinois Plaintiffs. We find that Illinois has personal jurisdiction over NP on the basis that it made and was to perform a contract that was substantially connected with Illinois.

**iv.**

In addition to exercising specific jurisdiction over the transaction or contract, an Illinois court can also exercise jurisdiction over a corporation when it is "doing business within th[e] state." 735 ILL. COMP. STAT. 5/2-209(b)(4). When a defendant "has indulged in the benefits of doing business in Illinois with an Illinois corporation[, it] should be required to defend the lawsuit that resulted from such business ventures." *Swissland Packing Co. v. Cox*, 627 N.E.2d 686, 688 (Ill. App. Ct. 1994). Doing business in the state will subject the defendant to jurisdiction in Illinois. The Illinois Appellate Court has previously found the following:

> [I]t is in no way unfair to submit to the jurisdiction of an Illinois court a defendant who sold goods to an Illinois corporation on two prior occasions and has contracted to deliver goods to such corporation's place of business in Illinois. When the defendant "purposefully avails [him]self of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws," the defendant is properly subject to personal jurisdiction in the forum state.

*Id.* (citing *Hanson v. Denkla*, 357 U.S. 235, 253 (1968)) (brackets in original).

- 12 -

In this case, it is clear that NP was, in fact, "doing business" within Illinois. It did business, not just with the Plaintiffs, but also with many other customers in Illinois. While the Plaintiffs' specific transaction at issue did not involve delivery of good in Illinois, many of NP's business transactions within the state have involved delivery of goods within the state of Illinois. From June 30, 2009 through October 1, 2013, NP did business with Illinois customers resulting in 158 total jobs and $1,155,441 in sales to Illinois customers with delivery to be in Illinois.

In addition to those transactions with other customers, NP previously engaged in business with the Plaintiffs. NP completed one job for RDI and accepted payment in the amount of $18,834.37. NP also completed three prior jobs for APT.[2] The first occurred on January 1, 2006 and resulted in payment to NP in the amount of $12,545. On October 13, 2006, another transaction occurred, resulting in a sale and payment to NP in the amount of $2,744.23. Finally, APT again conducted business with NP on June 7, 2007 and paid NP $17,034.16 for this sale. Thus, it is clear that NP conducted business within the state of Illinois, not just with the Plaintiffs but with many other customers. We hold that the Illinois court properly exercised personal jurisdiction over NP due to the fact that NP did business in the state. We hold that the Illinois judgment is not invalid on the basis that the court lacked personal jurisdiction over NP.

## D.

NP also challenges the Plaintiffs' notice of motion for default. NP alleges that "[t]he notice of hearing on the motion for default would not have been sufficient under the Tennessee Rules of Civil Procedure." To support its argument, it merely asserts that "Tennessee law should control." NP does not cite any authority for its argument that the Tennessee Rules of Civil Procedure should apply to the notice of hearing on the motion for default filed in Illinois. Because the Plaintiffs brought their action in Illinois, the Tennessee Rules of Civil Procedure did not control the procedural issue of the Plaintiffs' notice.

## E.

Because we find no reason to hold that the Illinois judgment is invalid, we must give it Full Faith and Credit. As previously noted, the United States Constitution mandates that "Full Faith and Credit shall be given in each state to the . . . judicial Proceedings of every other State." U.S. Const. art. IV, § 1. "The very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation

---

[2] The first two jobs were completed by National Partitions and Interiors, Inc. before it was acquired by and merged with NP.

- 13 -

throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." ***Milwaukee Cty. v. M.E. White Co.***, 296 U.S. 268, 277 (1935). We must honor the mandate of the Constitution as interpreted by the U.S. Supreme Court. Because we do not find grounds to hold that the Illinois judgment is invalid, we hold, as a matter of law, that the Plaintiffs have the right to enroll their Illinois judgment in Tennessee.

## VI.

In addition to challenging enrollment of the judgment, NP also challenges the trial court's decision to bar its counterclaim on the basis of res judicata. On appeal, NP asserts that "Tennessee Courts have found that counterclaims may be filed in actions to register foreign judgments." While counterclaims *may* be filed in actions to enroll foreign judgments, that does not give NP the unconditional right to file its counterclaim in this case. In this case, NP's counterclaim is an attempt to litigate issues already determined and seek damages already awarded in the prior Illinois case.

"The full faith and credit clause requires that the common law doctrine of res judicata be applied in one state to a judgment rendered in another state to the same extent that it applied in the state of its rendition." ***Coastcom, Inc. v. Cruzen***, 981 S.W.2d 179, 181 (Tenn. Ct. App. 1998). In Illinois, "[f]or the doctrine of res judicata to apply, three requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of cause of action; and (3) there was an identity of parties or their privies." ***Rein v. David A. Noyes & Co.***, 665 N.E.2d 1199, 1204 (Ill. 1996). A default judgment in Illinois "is entitled to the same preclusive effect under the doctrine of *res judicata* as any other judgment. . . . [D]efault judgments are always *res judicata* on the ultimate claim or demand presented in the complaint." ***Hous. Auth. for La Salle Cty. v. Young Men's Christian Ass'n of Ottawa***, 461 N.E.2d 959, 963 (Ill. App. Ct. 1984) (emphasis in original).

NP asserts that the Illinois Code of Civil Procedure does not provide for mandatory counterclaims and that its counterclaim is, therefore, not barred by res judicata. We disagree. NP relies on the Illinois rule providing that "any claim by one or more defendants against one or more plaintiffs . . . may be pleaded as a cross claim in any action, and when so pleaded shall be called a counterclaim." 735 ILL. COMP. STAT. 5/2-608(a). NP claims that the rule's language makes its counterclaim in this case permissive and that it should be allowed to raise it now. Illinois courts, however, have made clear that a counterclaim must be pleaded in certain situations or will be barred. The Illinois Appellate Court has provided as follows:

> In Illinois, counterclaims are generally permissive rather than
> mandatory. Therefore, a defendant generally may raise his or
> her claim against the plaintiff by way of a counterclaim or by

way of a separate action. Yet, *res judicata* bars the separate action if successful prosecution of that action would in effect nullify the judgment entered in the prior litigation. More particularly, if the defendant's claim involves the same operative facts as the plaintiff's claim, *res judicata* may bar the defendant from raising his or her claim in a subsequent action.

***Fuller Family Holdings, LLC v. Northern Trust Co.***, 863 N.E.2d 605, 617 (Ill. App. Ct. 2007) (emphasis in original). "If defendant's claim against plaintiff constitutes a separate cause of action, the claim may be asserted in a subsequent independent action. However, if the claim involves the same operative facts, the doctrine of Res Judicata may operate to bar subsequent action." ***Block & Co., Inc. v. Storm Printing Co.***, 351 N.E.2d 271, 274 (Ill. App. Ct. 1976) (reversed on other grounds).

Thus, Illinois precedent makes it clear that, while counterclaims are generally permissive, counterclaims may be mandatory and barred by res judicata when the counterclaim relies on the same operative facts as a prior action. Illinois clearly applies res judicata to counterclaims when allowing the defendant to bring the claim in a subsequent action would nullify the prior judgment. ***Fuller Family Holdings, LLC v. Northern Trust Co.***, 863 N.E.2d at 617.

Here, NP is attempting to bring its counterclaim in a subsequent action. The Plaintiffs' action to enroll its Illinois judgment in Tennessee is a separate action from its breach of contract action in Illinois. If we allow NP's counterclaim to proceed and find in favor of NP on the claim, we would effectively nullify the Illinois judgment. If that finding were made, there would be an Illinois judgment ordering NP to pay the Plaintiffs damages in the amount of $60,000 and a separate Tennessee judgment ordering the Plaintiffs to pay NP damages. This would result in two contradictory judgments in effect nullifying the initial Illinois judgment. That result would not afford the Illinois judgment the full faith and credit to which it is entitled under the Constitution.

NP's counterclaim clearly arises out of the same operative facts that the Plaintiffs' original case involve. The counterclaim involves the exact transaction upon which the original case was based. NP, however, asserts that it was the Plaintiffs who breached the contract and that it is the party entitled to damages. NP could have made the decision to assert its claim in the Illinois action but made the decision not to do so. In the original action, either NP breached the contract or the Plaintiffs breached the contract. The same operative facts are needed to determine which party was the breaching party. Thus, the initial Illinois cause of action involves the same operative facts that NP's counterclaim involves. Because NP's cause of action involves these same operative facts, NP was required to bring its counterclaim in the initial action. Because NP did not bring its counterclaim in the initial action and its counterclaim involves the same operative facts,

- 15 -

we hold, as a matter of law, that its claim is barred by res judicata.

## VII.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant, National Partitions, Inc. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE